No. 37,061

W. N. WHITE, *Appellant,* v. R. H. TURNER, *Appellee.*

(192 P. 2d 200)

Opinion filed April 10, 1948.

*Jay W. Scovel,* of Independence, argued the cause, and was on the briefs for the appellant.

*Kirke C. Veeder,* of Independence, argued the cause, and was on the briefs for the appellee.

The opinion of the court was delivered by

PARKER, J.: This is an action to recover a real-estate commission.

The petition alleges that on July 26, 1946, defendant in writing authorized and employed plaintiff to procure a purchaser for a certain residence property, describing it, in the city of Independence, and that pursuant to such authorization and in conformity therewith plaintiff, acting as the defendant's agent, procured a purchaser, one Mary E. Varner, who was ready, able, and willing to purchase such property on the terms and conditions specified by defendant. It then states plaintiff communicated the offer to purchase the property to defendant, who refused to consummate the sale, with the result he became liable to plaintiff for the commission sued for, payment of which has been demanded and refused.

Attached to such pleading, and made a part thereof, was a copy of a letter, hereinafter more fully described, on which plaintiff's right of action is founded.

Defendant's answer contains a general denial, concedes the execution of the letter and admits that he, at all times, refused to deal or consummate a sale of the property on contract to Mary E. Varner. Such pleading then alleges that long prior to plaintiff's communication of such prospective purchaser's offer, which was an offer to purchase on contract, defendant had informed plaintiff and plaintiff well knew defendant was unwilling to grant Mrs. Varner a purchase contract on any terms, excepting cash. It then states defendant never provided plaintiff with any terms, conditions or provisions of a contract that was or would be acceptable to or approved for the sale of the property, and that the only authority plaintiff had under such letter to procure a purchaser other than for cash

was on contractual terms submitted to, confirmed and approved by defendant. Finally it charges that plaintiff at no time submitted a contract, the terms of which were acceptable to or approved by defendant, and specifically avers that plaintiff never procured a cash purchaser for the property.

Plaintiff's reply denies all averments of the answer contrary to or inconsistent with the allegations of the petition.

With issues framed by the pleadings, as heretofore related, the cause was submitted to the trial court for decision upon an agreed statement of facts and stipulations concerning the testimony of the plaintiff and one witness, Mary E. Varner. Plaintiff rested his cause on this evidence. Defendant then demurred to such evidence and moved for judgment upon the record. In due time the court overruled the demurrer but sustained the motion for judgment. Plaintiff then perfected his appeal and now brings the case here for review under specifications charging the trial court erred in rendering judgment against him and in overruling his motion for a new trial.

Since all the evidence is in written form we are required to determine its import in substantially the same manner as we would if this were an original case (*Shriver v. Besse*, 163 Kan. 402, 182 P. 2d 407, and *In re Estate of Besse*, 163 Kan. 413, 183 P. 2d 414), and hence must review the record in its entirety.

We first turn to the agreed statement of facts which includes seventeen letters, telegrams and proposed contracts, reflecting all the negotiations had between the parties. Whenever it is deemed necessary these instruments will be quoted in whole or in part, otherwise their substance will be summarized. Where emphasis appears it is supplied by the court.

On July 18, 1946, appellant wrote appellee as follows:

"As you know I am in the real estate and insurance business in Independence now and I am wondering if you intend to dispose of your property here. Should you desire to sell I would like very much to have the opportunity of listing your property as I have some good prospects lined up. . . .

"Mr. Joy Shaver with the Calvert Company is looking for a place and so that is the reason I am writing this at this time.

. . . . . . . . . . . . . . . . . .

"May I hear from you if I can be of service to you."

Appellee replied to the foregoing inquiry by letter, dated July 26, 1946. This letter, it should be noted, is the one attached to the petition as the foundation for the cause of action and its execution

and delivery is admitted by the answer. Portions thereof, having to do with the listing of the property for sale, read:

"Your inquiry concerning the house duly received. This is a matter we did not decide until Mrs. Turner returned and in as much as a couple of the boys had made inquiry I sent them a listing a few days ago and will be pleased to include you among the dealers. In fact, I think you are the ideal one to handle a property like ours.

"Will sell the house with the extra lot adjoining.

"The house will include the dining room table and chairs.

"Will leave the 30″ high speed fan in attic.

"Will leave the two mahogony pieces in master bed room since it would be very hard to buy anything that size at present.

"Blinds, shades and drapes throughout the house as was left when we rented to Mr. March.

"Sun room fire place equipment and egg baskets for the other fire places.

"Extra grates for furnace for burning wood, coke or coal.

"All lawn equipment.

"*Terms, cash or contract.*

"Price $15,800.00.

"Will ask that you phone Mrs. March before showing the house."

July 30, appellant sent appellee the following telegram:

"Have lady interested in property but need further information. *Price satisfactory if terms can be met 25% Down, balance 4% interest.* Payment of $150 per month to be applied first on interest and balance on principal with right to pay additional amounts at any time. When can possession be given? How much insurance would you require? *You may authorize me to take down payment if these terms are satisfactory.* Please answer."

Two days later, on August 1, appellee answered the last quoted message by wire which reads:

"*Probably make better terms if I know your interested party.* Possession need be six months unless Mr. March will agree to less. *Will advise you when I hear from him.*"

The following day, August 2, appellant wrote appellee as follows:

"Your wire received and I will give you the line-up on the sale as far as it has gone:

"Mary E. Varner of Independence is the buyer and she lives in the old Black property just two doors south of your house. We were over the other day and checked through the house and she was definitely interested. You stated in your letter, '*cash or on contract*', hence the statement made in my telegram to you which was as follows:

(Here follows exact quotation of telegram dated July 30, 1946.)

"On the usual contract for deed *say that she would pay* 25% down and the balance at $150 per month, each month's payment to be applied first on the interest and the balance on the principal. The buyer would have the right to

accept the deed and abstract and to give you a mortgage when ever the purchase price had been paid. down to 50%. The buyer to keep the insurance and taxes paid during the life of the contract.

"Mrs. March was very courteous in letting us see the property and we will go back next Monday to look at it again.

"I will let you know further as this sale develops."

August 12, appellee sent appellant the following letter:

"Your letter in return to wire received and since your Monday showing has brought forth no answer we presume Miss Varner isn't able to handle the deal.

"Frankly, I would not be willing to grant a contract to her so far as I know of her dealings. In the first place we want to think of the place going to some one for a home or duplex for that is what it is ideally arranged for. Then again her spread seems to be entirely too broad for a person of her evident income.

"We are favorable leaning to the contract providing we find the right party. Evidently your man with the Calverts wasn't interested.

"Trusting you will yet find the party, I remain."

A letter from appellant to appellee, also bearing date of August 12, reads:

"The Marches are away on their vacation and Mrs. Varner did not get to see the house as planned, however, *she is still interested and will look at it again as soon as they return.* I have taken the matter of possession up with Mr. Cable of the rent control board and he assures me that he believes we can ask for possession within three months.

"*Since I have not heard from you I presume that the contract as outlined in my letter of August 2nd will be satisfactory.*

"Please let me know at once if you have any further suggestions."

On August 19 appellant mailed appellee a letter in which the following statements appear:

"Enclosed herewith you will find two copies of an offer to Purchase your property at 300 South 4th., Independence.

"Since Mrs. Varner is thinking of working this property out in connection with the nursing home she already has I checked her finances and find that she has a very substantial income and she has clear the following pieces of property:

"After you have checked this over *and should it meet with your approval,* if you will sign the acceptance at the bottom of the original copy of the offer and mail the same back to me together with the abstract we will close up the deal as soon as possible.

"For your information I am also enclosing a proposed copy of Contract for Deed; of course, this contract means that you are the record owner and

will be until the payments have paid out the full one-half of the purchase price, then a mortgage can be given.

"Awaiting your further instructions, I am,

. . . . . . . . . . . . .

"This is a suggested form that we use, you may want to add or detract from it."

So far as the record reveals the offer to purchase referred to in the last above mentioned letter was not offered in evidence. However, we are told, it stated Mrs. Varner would put up $1,000 earnest money, $4,000 more upon execution of the contract, and would pay the balance of the purchase price at $150 per month with interest at four percent.

The contract mentioned, to which was attached a check for $1,000, was enclosed in such letter. It was never accepted or executed and has little, if any, probative value. For our purpose it suffices to say the consideration and terms therein stated were identical with those set forth in the offer to purchase.

In reply to the letter just mentioned appellee, on August 22, advised appellant as follows:

"I am returning the check and contracts.

"Mrs. Varner's offer is just a little inconsistent with the value she puts on the Black property. Her valuation of $10,000 would put our property in the $25,000.00 with the furniture which she is asking for.

. . . . . . . . . . . . . .

"If it doesn't sell as listed we may decide to come back this fall and put it in order. I think too that it might sell better if vacant. I understand there have been other prospects but nothing definite has developed."

Appellant's response to this reply was a letter dated August 26, which reads:

"Your letter of August 22nd received and I have talked with Mrs. Varner and have sold the property to *her in accordance with your letter of July 26th in which you state the lots and equipment either on a cash or contract basis of $15,800.00.*

"We have rewritten the contract as of August 26th to comply with the terms of your letter of July 26th and enclose two copies together with the $1,000.00 check as down payment. Please sign the acceptance on the original copy and have your signature witnessed and return the original to us together with the abstract and we will proceed to complete the deal.

"Mrs. Varner will, of course, have to take care of getting possession.

"The carbon copy of the contract is to be retained for your files."

Enclosed in this letter was a second offer to purchase stating Mrs. Varner desired to purchase the property and would pay $15,800 for the same on the following terms: $3,950 in cash, and the bal-

ance of $11,850 to be payable with interest at four percent at $150 per month under a contract for deed which, in addition to provisions respecting deferred payments, was to provide that when one-half of the purchase price had been paid a deed was to be given and a mortgage taken back for the balance. Also enclosed was a check for $1,000 as a down payment. We assume the contract mentioned was likewise enclosed although it does not appear in the record.

Upon receipt of the foregoing letter appellee promptly sent appellant the following telegram:

"As previously advised your contract with Varner not acceptable. Now advise that refuse to sell Varner under any terms, cash or contract. Also refuse to sell to anyone as a nursing home your listing to be confirmed accordingly. Letter follows. . . ."

The letter referred to in this telegram, dated September 2, 1946, was mailed by appellee, and received by appellant. It reads:

"Since I stated in my letter of August 12th we were not willing to grant a contract to Mrs. Varner I thought it was definitely understood, so far as she is concerned. Hence my wire of yesterday.

"I am accordingly returning check and contract and trust you understand our position in this matter. . . ."

The two stipulations, to which reference has heretofore been made, are not lengthy and their substance can be briefly stated. One is to the effect that between August 20, 1946, and September 1, 1946, Mrs. Varner's financial worth approximated $50,000 and that her income from rentals on property owned by her amounted to $1,190 per month. The other provides that after receipt of the letter of July 26, 1946, the appellant contacted Mrs. Varner, and that all subsequently dated letters, telegrams and communications followed as set forth in the agreed statement of facts. It also specifies that the customary real-estate commission fee in Independence, on all dates involved, was five percent of the sale price.

That a real-estate dealer is entitled to his commission for a sale of land when he has produced a purchaser who is ready, willing and able to buy on the precise terms prescribed by the owner in his listing contract is the well-settled rule in this (*Lockwood v. Halsey*, 41 Kan. 166, 169, 21 Pac. 98; *Davis v. Lawrence*, 52 Kan. 383, 34 Pac. 1051; *Beougher v. Clark*, 81 Kan. 250, 106 Pac. 39; *English v. Harris*, 106 Kan. 167, 186 Pac. 987; *Moore v. Gould*, 108 Kan. 99, 193 Pac. 1057) and other jurisdictions (12 C. J. S. 58, 180, 204, §§ 20, 83, 89; 8 Am. Jur. 1084, § 168).

When appellant's argument is carefully analyzed it appears his position is that the correspondence had between the parties, and the other written instruments to be found in the record, affirmatively establish that he had done everything required by the terms of his listing agreement and is therefore entitled to judgment for the commission sued for. Thus we are required to not only construe the contract but pass upon whether the evidence discloses performance of its terms as construed.

We turn first to the contract of employment as set forth in appellee's letter of July 26, 1946, mindful as we do so that the general principles of law governing the construction of contracts generally are applicable to the construction of a real-estate agent's contract of employment (8 Am. Jur. 999, § 18; 12 C. J. S. 32, 58, 133, § 12, 20, 59). Obviously, production by appellant of a purchaser who was willing to pay $15,800 cash for the property would have been precise compliance with the terms of the agreement and, under the rule to which we have heretofore referred, would have entitled him to his commission even though appellee had refused to complete the sale. But that is not this case. Instead of producing such a purchaser appellant produced one who desired to buy on terms. What then was appellant required to do in order to be entitled to a commission under an agreement authorizing him to sell on "contract" but failing to provide what the terms of such contract must be?

Resort to other decisions dealing with contracts of a similar nature, the provisions of which—as here—left something to be done in the future with respect to material terms and conditions of a sale, will be helpful.

In *Osburn v. Addington*, 91 Kan. 586, 138 Pac. 603, we held:

"A broker who undertakes for his principal to negotiate an exchange of properties on specified terms or those which will be satisfactory to his principal is not entitled to a commission until an agreement between owners has been made nor so long as any of the material terms or conditions of the exchange are unsettled." (Syl. ¶ 1.)

In *Pugh v. Dollahan*, 49 N. M. 213, 160 P. 2d 951, a broker authorized to sell only for cash, produced a prospective purchaser who would pay part cash only. The owner then told the broker he would sell for part cash and "give terms on the remainder" without fixing such terms. The broker went ahead and procured a purchaser who was willing to buy on terms only to find the owner had

sold the property. He then brought suit to recover his commission. The owner's motion for judgment was overruled. In reversing the trial court the supreme court of New Mexico held that failure to fix the terms on which the buyer was to purchase and the owner to sell precluded the broker from recovering his commission.

*Crews v. Sullivan,* 133 Va. 478, 113 S. E. 865, deals with a contract authorizing a broker to sell land on easy terms. The broker submitted a proposal to purchase on terms which he considered fair and reasonable. The owner refused to sell insisting on different terms. The agent then sued for and recovered a commission on the theory he had complied with the listing agreement. In reversing the judgment the court said:

"The words 'easy terms,' contained in the contract of August 16th, are absolutely indefinite, and left the terms of the sale open for the approval of the owner. While it is true Sullivan was the special agent for Crews to sell the property in question, there is nothing in the evidence to warrant the jury in holding that Sullivan, as such agent, was vested with the authority to fix the terms of sale, without regard to the wishes of Crews. It is true the plaintiff testified that, when he told Crews Moore was offering $2,500 cash and wanted good terms on the balance, Crews said, 'I am not particular about the balance,' but this language is not sufficiently definite to bind Crews to accept any terms of sale which Sullivan might see fit to name." (113 S. E. 867, 868.)

In *Clark v. United Ben. Life Ins. Co.* (Texas), 62 S. W. 2d 633, the terms of the involved contract authorized a broker to sell realty for part cash with ample time for payment of the balance. The broker procured a purchaser but failed to induce the owner to agree on terms. He then sued for his commission. In upholding a directed verdict in favor of the owner the appellate court said:

"1. Plaintiff alleged that he was employed by defendant to make the sale for a minimum of $5,000, of which 'a reasonable part' was to be in cash, with ample time for the payment of the balance. Of course, such agreement was so indefinite as to terms that plaintiff was thereby given no authority to contract for the sale except upon terms to be first submitted to and confirmed by defendant." (p. 634.)

To the same effect are *Judis v. V. B. Holding Corporation,* 285 N. Y. S. 449, 3 N. E. 2d 879; *Walsh v. Braden,* 300 N. Y. S. 614; *Meyer & Steffens Inc. v. Claflin Realty Corporation,* 8 N. Y. S. 316; *Williams & Co. v. Groveville Corporation,* 11 N. Y. S. 2d 413.

For a more general statement of the legal principle upon which the foregoing decisions are based see Restatement, Agency, 1039, § 445:

"*d.* Effect of completeness of terms given broker.

"The principal may either specify to the broker all his terms or furnish the broker with only part of the terms, the price for example, with the understanding that further details are subject to negotiation between the principal and the customer when found.

. . . . . . . . . . . . . .

"When the principal has furnished the broker with only part of the terms, with the understanding that further details are subject to negotiation between the principal and the customer when found, the principal is free to terminate such negotiations without liability to the broker. The principal's promise to pay the broker a commission does not become binding unless the principal and the customer reach a present definitive oral or written agreement."

See, also, 12 C. J. S. 182, § 83, which states:

"Where a sale, purchase, or exchange is to be negotiated, and terms are stipulated by the principal, there must be a conformity to those terms, and where no price or terms are fixed, it is necessary to secure an offer which is acceptable to the employer."

Under the authorities heretofore cited, and indeed when tested by general rules of contractual construction, we have no difficulty in concluding the instant contract must be construed as giving the appellant authority to sell the property in question by contract, only upon terms and conditions to be agreed upon and which were satisfactory and acceptable to the appellant. Even if the phrase "Terms, cash or contract," without fixing the terms in the event of sale other than for cash, be regarded as ambiguous the same construction follows. We have repeatedly held that the construction placed by the parties upon a contract which is indefinite and uncertain will be adopted if not inconsistent with its language (3 West's Kansas Digest, Contracts, § 170; Hatcher's Kansas Digest, Contracts, § 47). Resort to the correspondence had between the parties, particularly those portions underlined for purposes of emphasis, clearly reveals that up until August 12, at least, the date on which appellee advised appellant he would not be willing to sell to Mrs. Varner on contract, all parties so interpreted the contract and, even then, it will be noted by reference to appellant's letter of the same date, Mrs. Varner had not agreed to buy but was "still interested." We do not regard the subsequent correspondence as indicative of a contrary construction. The most that can be said for it is that it reveals offers to purchase which were never accepted by the appellee.

No useful purpose will be served by reviewing the evidence. It suffices to say that after a careful examination of the entire record

we fail to find any testimony establishing that appellant ever produced any purchaser who offered, or was ready, willing and able, to buy the involved property under a contract upon terms acceptable to, or confirmed by, the appellee as required by the listing agreement. Therefore his evidence failed to sustain his claim he had earned a real-estate commission under its terms and the trial court properly so held.

Appellant points to the appellee's letter of August 1, wherein the latter stated "probably make better terms if I know your interested party" and insists such language compels the conclusion appellee had confirmed the terms suggested in the letter of July 30. We cannot agree. Attention is directed to the fact such statement is followed by another "Will advise you when I hear from him." Besides this court long ago rejected a similar contention when in *Shriver v. Bell*, 109 Kan. 344, 198 Pac. 933, it held:

"The owner of a tract of land wrote to a real-estate broker (who had submitted an offer for it which was not accepted) asking him to see if he could get a certain amount on stated terms, and adding—'If I can I will advise you at once and may accept your offer as you have made it'. The broker wired in answer that he accepted the offer. Held, that no contract resulted and the broker was not entitled to recover a commission for having procured a customer ready to take the land on the terms named, for the reason the language quoted amounted to a reservation on the part of the owner of the right to refuse to sell on the terms referred to." (Syl.)

Under our construction of the contract and the evidence we do not reach the question, strenuously urged, that Mrs. Varner was financially able to carry out the terms of the agreement suggested in her offers of purchase. The decisions pertaining to liability of an owner of real estate for a real-estate commission, when the issue is financial responsibility, of the prospective purchaser presuppose the existence of a listing agreement where the terms of the contract have been definitely fixed or, if not, subsequently agreed upon by the parties.

The judgment is affirmed.