No. 43,583

IDA F. LOVE, *Appellant,* v. COMMON SCHOOL DISTRICT NO. 28, *Appellee.*

(391 P. 2d 152)

Opinion filed April 11, 1964.

*Eugene C. Riling,* of Lawrence, argued the cause, and *John J. Riling,* of Lawrence, was with him on the briefs for the appellant.

*Ethan Potter,* of Leavenworth, argued the cause and was on the briefs for the appellee.

The opinion of the court was delivered by

FONTRON, J.: On September 26, 1961, Common School District No. 28, the appellee herein, condemned certain real estate, consisting of four lots and a house in Tonganoxie, owned by Ida F. Love, the appellant. Mrs. Love appealed from the appraisers' award and, upon trial to a jury, a verdict was returned for $11,500.00. From this judgment and from the order overruling her motion for a new trial, Mrs. Love has appealed, alleging error in the admission

of certain evidence and in the giving of one instruction. For convenience, the appellant will be referred to as plaintiff and the appellee as defendant.

The evidence of which complaint is made is found in the testimony of one Louis Higgins, who was employed in the Leavenworth County Assessor's office as county real estate appraiser. Mr. Higgins, who was the sole witness used by the defendant at the trial, was permitted to testify, over strenuous objection by plaintiff's counsel, as to the "market value" placed on plaintiff's property in 1958, for taxation purposes, by E. T. Wilkins and Associates, an appraisal firm of Lincoln, Nebraska. Reading from cards on file in his office, Higgins, over objection, testified that the valuation established on plaintiff's house by the Wilkins firm was $5,233.00 and the value put on each of the four lots was $480.00 (making a total of $7,153.00), and further testified that he (Higgins) computed the assessed valuation at 30% of those amounts.

Mr. Higgins was commendably frank in admitting that he, himself, had not written the figures on the cards; that he had never owned or sold real estate in Tonganoxie; that he does not try to know the values of real estate in Tonganoxie; that he had never been in the house until after it was moved; and did not know, of his own knowledge, what the market value of the Love property would be.

At the conclusion of Higgins' testimony, plaintiff's counsel renewed his objections and moved to strike the entire testimony of the witness from the record. This motion was overruled.

It may be noted here, that when the motion for new trial was heard, counsel for defendant was permitted, again over objection, to produce Higgins as a witness who, at this time, testified in somewhat greater detail as to the methods allegedly used by the Wilkins firm in making the appraisal. At this time, also, the cards which Higgins used at the trial were marked and admitted in evidence, over plaintiff's objection. This somewhat unorthodox procedure has no material bearing on the questions presented in this appeal, and hence will be ignored.

The testimony of the witness Higgins relating to the market value of plaintiff's property was clearly hearsay, for it was not based on any facts within his personal knowledge. The figures to which he testified were but the opinions of an unnamed employee of the Wilkins firm, now apparently deceased, who was not available for

cross-examination either as to his credibility or as to the methods used and the factors considered by him in arriving at his opinions.

Higgins' testimony was admitted on the theory, urged by the defendant both at the trial and on this appeal, that the cards containing the appraisal figures were public records. However, the rule relating to the admissibility of official documents does not abrogate the prohibition against hearsay evidence. In Vol. 3, Jones on Evidence [Fifth Ed.], § 544, p. 1059, the rule is stated:

"As an exception to the hearsay rule the common law doctrine of admissibility of official records limits the admissibility to those matters as to which the official could testify if he were testifying as a witness. In other words only his recorded statements based on his personal knowledge are admissible."

The rule as to opinions contained in public documents is stated in 32 C. J. S., Evidence, § 637, p. 490, in the following language:

"In so far as documents set forth the mere opinions or conclusions of public officials, they are inadmissible as official records or documents, . . ."

And, in 32 C. J. S., Evidence, § 644, p. 509, this statement of the law is found:

". . . A public record is not, however, evidence of matters incidentally noted therein, or not properly belonging in the record, nor may a report embodying conclusions of public officers be admitted as evidence of facts. . . ."

In 20 Am. Jur., Evidence, § 1026, p. 866, the following rule is set forth:

". . . Tax books or lists are admissible to show the mere listing of land for taxation and the assessments of taxes levied upon the property and their validity, but not as a general rule to prove the value of the land. . . ."

It occurs to us that the testimony of Mr. Higgins violates all these principles. Not only were the figures inscribed on the cards simply opinion and conclusions, but they were not even those of a public official. Furthermore, the figures were established for use in determining assessed values for taxation purposes by a party not present at the trial or available for cross-examination.

The importance of cross-examination in a case such as this was stressed in the concurring opinion of Justice Schroeder in *Cline v. Kansas Gas & Electric Company*, 182 Kan. 155, 318 P. 2d 1000, where he said: ". . . Only by permitting cross examination of witnesses to the fullest extent in a condemnation action can a jury be in any position to determine the probative value of opinion testimony. . . ." (p. 163.)

The defendant cites *Hamilton v. Railway Co.*, 95 Kan. 353, 148 Pac. 648, to support the admissibility of Higgins' testimony. That decision, however, is not controlling under the facts present here. In that case, an assessor was permitted to testify that he assessed the land in controversy at a certain valuation. In affirming the lower court's judgment this court pointed out that the assessor had made the assessment under oath, pursuant to the law requiring that land be assessed at its true value in money, to be determined from actual view and inspection; that had the assessor been asked to give his opinion of value, he would have been properly permitted to give it; and that in permitting him to testify as to the value fixed by him in his assessment, instead of giving his opinion of value, "the error, if any there was, . . . does not seem to be sufficient to cause a reversal of the judgment." (p. 355)

In the instant case the assessor, Higgins, had not personally appraised plaintiff's property nor was he the person whose opinion was admitted; that individual was neither present nor available for cross-examination. In addition, the assessed valuation was concededly not the true money value of plaintiff's property.

It must be concluded that Higgins' testimony, hearsay as it was in character, was erroneously admitted.

His testimony was improperly admitted for another reason. The date of the condemnation of plaintiff's property was September 26, 1961, while the Wilkins' appraisal was made in 1958. It has long been the rule that land taken by condemnation is to be valued as of the date of the taking. In *Wier v. St. L., Ft. S. & W. Rld. Co.*, 40 Kan. 130, 19 Pac. 316, the court said: ". . . The general current of authorities is that in all such cases (of condemnation) compensation should be ascertained and assessed as of the time when the property was taken. . . ." (p. 140)

For other cases applying the rule, see *C. B. U. P. Rld. Co., v. Andrews*, 26 Kan. 702; *Emery v. Riverside Drainage District*, 132 Kan. 98, 294 Pac. 888; *Steck v. City of Wichita*, 179 Kan. 305, 295 P. 2d 1068.

This principle is too well established to require further elaboration. It is sufficient to say that evidence of the value of plaintiff's property in 1958 would not be competent to establish its value in 1961 under the circumstances of this case, where improvements to plaintiff's property had been added after 1958, and where there was a total

lack of evidence by means of which its value in 1958 could be compared with its value in 1961.

The plaintiff also assigns as error the giving of Instruction No. 15, which reads:

"In this case there has been testimony as to the valuation placed upon the property in question in this case in 1958 for tax purposes by an appraiser employed by the County of Leavenworth and that said valuation had not been changed on the records of the County Assessor at the date of the taking of said property by the defendant from the plaintiff. The jury is instructed that such testimony is competent but it is not conclusive. In considering such evidence the jury should do it in the light of all the other facts and circumstances proven upon the trial, and then apply to it such weight as in their judgment they believe it to be entitled to receive."

What has heretofore been said relative to the inadmissibility of the evidence given by Higgins is relevant on this point. Testimony as to the value placed on plaintiff's property in 1958 for tax purposes by an appraiser who was not present and available for cross-examination, was not competent and it was error to so instruct.

It cannot be said that the above errors committed at the trial were not prejudicial to plaintiff. No witness, except Higgins himself reading from Wilkins' appraisal, assigned a value to the Love property of less than $12,000.00. Three of the plaintiff's witnesses, who acted as appraisers in the condemnation proceedings, fixed the value at $12,000.00, while a fourth witness, engaged in the real estate business in Tonganoxie for forty years, gave his estimate of value as $14,000.00. The plaintiff, herself, thought her property worth $18,-000.00 and so testified. In view of these facts, it would ignore human realities to say that the Wilkins' appraisal of $7,153.00 could not have affected the jury's verdict.

The judgment of the lower court is reversed with instructions to grant a new trial.

It is so ordered.