No. 45,253

STATE OF KANSAS, *Appellee,* v. KEITH DEAN GORDON, *Appellant.*

(453 P. 2d 80)

Opinion filed April 12, 1969.

*Joel A. Sterrett,* of Topeka, argued the cause and was on the brief for the appellant.

*Gene M. Olander,* County Attorney, argued the cause, and *Kent Frizzell,* Attorney General, was with him on the brief for the appellee.

The opinion of the court was delivered by

PRICE, C. J.: Defendant appeals from a conviction of "escape" as defined by K. S. A. 21-734.

The question presented is whether the "Kansas state reception and diagnostic center" (K. S. A. 76-24a01 *et seq.,* as amended) and hereafter referred to as Center, is a penitentiary or prison within the meaning of the above mentioned "escape" statute.

For reasons hereafter appearing we hold that it is, and that defendant's contentions to the contrary cannot be sustained.

In 1963 defendant was convicted in the district court of Sedgwick county of the offenses of burglary in the second degree, larceny in connection with such burglary, and possession of burglary tools. Sentences of not less than 5 nor more than 10 years, not less than 1 nor more than 5 years, and not less than 1 nor more than 3 years—were imposed—to run concurrently. Pursuant thereto defendant was committed to the state penitentiary at Lansing.

In July 1966, while confined in the state penitentiary under the above sentences, defendant was transferred to the Center which is located at Topeka. There he was housed in a barracks outside the security fence, and performed certain maintenance duties about the Center. On the night of August 25, 1966, he was found to be missing. Five days later he was apprehended in Kansas City. He was charged with escape in violation of K. S. A. 21-734.

In substance, the information charged that defendant, while being lawfully confined in the state penitentiary at Lansing under a

sentence for term of years less than life, and having been assigned and transferred to the Center at Topeka as a "trusty" and while being lawfully confined therein—escaped from the confinement and custody of such institution.

K. S. A. 21-734 reads—

"If any person confined at hard labor for any term less than life shall escape therefrom without being guilty of breaking such prison within the meaning of the preceding section, he shall upon conviction be punished by confinement and hard labor for a term not exceeding three years, to commence at the expiration of the original term of imprisonment."

The preceding section (K. S. A. 21-733) provides that if any person confined in the penitentiary for any term less than life shall escape from such prison or from the custody of the officers, he shall be liable to the punishment imposed for breaking the prison.

Defendant's motion to quash the information on the ground it stated no offense was overruled. He was convicted as charged, and this appeal followed.

The gist of defendant's contentions may be summarized briefly:

The "escape" statutes, above, have reference only to a "prison or penitentiary". The law creating the Center was enacted long after those statutes, and the legislature simply failed to keep pace in enacting legislation making it a crime to escape from such new facility. In other words, it is argued that the Center is not a prison or penitentiary within the meaning of the escape statutes—and, there being no statute specifically referring to escape from the Center—to do so does not constitute an offense.

The Center was created by Chapter 436, Laws of 1961, now appearing at K. S. A. 76-24a01, *et seq.*, as amended. Under provisions of the act a "state penal institution" is defined as the state penitentiary, the state industrial reformatory, "or any other penal institution hereafter established by the state for the confinement of male offenders." The Center is placed under the jurisdiction of the state director of penal institutions. The declared function and purpose of the Center is to provide a thorough and scientific examination and study of all felony male offenders to the end that a maximum of rehabilitation may be accomplished. Male offenders are first taken to the Center for examination and study, and after completion of the recommended rehabilitation program are delivered to one of the state penal institutions for confinement. The director of penal institutions may make requisition upon the warden

of the penitentiary for any prisoner and transfer such prisoner to the Center for examination and study, and upon completion of such study and examination the prisoner shall be assigned to a penal institution for confinement in like manner as new offenders are assigned. The director also may direct a prisoner in the penitentiary to be transferred to the Center for the purpose of performing work or services at the Center, and a prisoner so employed is entitled to the same good-time allowances as he would receive for similar work or service at the institution from which he is transferred. The director is empowered to make all rules and regulations necessary for the discipline and confinement of all prisoners at the Center.

The word "penitentiary"—signifying a prison or place of punishment—means the place of punishment in which convicts sentenced to confinement and hard labor, are confined by authority of the law (*Millar v. The State*, 2 Kan. * 174, syl. 7; *The State v. Nolan*, 48 Kan. 723, 731, 29 Pac. 568). And see *State, ex rel., v. Owens*, 197 Kan. 212, 221, 416 P. 2d 259.

The scope, purpose and intent of the creation of the Center was to facilitate the administration of justice by improving and modernizing the rehabilitative capacity of the state penal system. The transfer of defendant from the penitentiary at Lansing to the Center was merely an "institutional transfer"—fully authorized by the act creating the Center. By the very provision of the act [K. S. A. 76-24a01 (*c*)] the Center is declared to be a "state penal institution". It follows that escape therefrom under the circumstances related constitutes an offense under the "escape" statute in question.

The judgment is affirmed.