No. 45,437

In the Matter of the Estate of Joe Bernatzki, Deceased. MARY VEACH, Proponent of the Last Will, *Appellant,* v. ELIZABETH STIEBE, MARGARET MULFORD, RICHARD BERNATZKI, CLYDE J. HOWERTON, Contestants of the Last Will, *Appellees.*

(460 P. 2d 527)

■■■■■■■■■■■

■■■■■■■■■■■

■■■■■■■■■■■ Opinion
filed November 8, 1969. ■■■■

*William H. Pringle,* of Great Bend, argued the cause, and *Melvin O. Nuss, Vernon L. Nuss, Leonard A. Birzer* and *Gary Lee Kaufman,* all of Great Bend, were with him on the brief for the appellant.

*Rae E. Batt,* of Kinsley, argued the cause, and *J. Byron Meeks,* also of Kinsley, was with him on the brief for the appellees.

The opinion of the court was delivered by

FONTRON, J.: This case involves the validity of a will. Mary Veach, to whom we will refer hereafter either as plaintiff or by name, is the proponent of the purported last will and testament of her brother, Joe Bernatzki. Joe's three children, Elizabeth Stiebe, Richard Bernatzki and Margaret Mulford are contesting the will on the basis of both undue influence and lack of testamentary capacity. We shall refer to these contestants collectively as defendants. The trial court found the will to be void and that probate should be denied. The plaintiff has appealed from that decision.

The background of the case is somewhat depressing. In 1954 Joe Bernatzki was convicted on three charges of crimes against nature and was sentenced to three consecutive terms of from one to ten years in the Kansas State Penitentiary. Joe was paroled in 1958 but the following year his parole was revoked for some undisclosed infraction and he was recommitted to the penitentiary, where he remained until his death on May 26, 1966.

On February 14, 1962, Joe made a will which was notarized but not witnessed. He sent this will to his sister Mary for safekeeping, and no attempt has ever been made to have it admitted to probate.

Nearly three years later, on December 30, 1964, Joe executed a second will, properly signed and witnessed. This was prepared by Mr. Donald L. Burnett, a Larned attorney whom Mary Veach consulted for that purpose at brother Joe's request. In this will Joe devised and bequeathed $1 to each of his three children, $2,500 to his brother Raymond, $2,000 to his sister Maggie and the remainder of his property, including an account in the Inter-State

Federal Savings & Loan Association of Kansas City, Kansas, to his sister, Mary. Mary proffered this will for probate. Its provisions are the same as those in the notarized will of 1962, with this one exception: a bequest of $1,000 to his daughter Margaret, contained in the 1962 will, was reduced to the sum of $1.

After being transferred from probate court to district court for trial, the case was heard before Judge Wildgen. A large amount of evidence was introduced by deposition and by oral testimony and the trial court, after making extensive findings of fact, concluded that the will was invalid on two grounds: (1) That Joe Bernatzki was not of sound mind at the time of signing his last will and testament on December 30, 1964, and (2) that said will was the result of undue influence on the part of the principal beneficiary, Mary Veach.

The plaintiff's primary argument on appeal is directed to the sufficiency of the evidence. In addressing ourselves to that question, we again reiterate the venerable rule, now grown hoary with age, that findings of the trial court which are supported by substantial competent evidence are not to be overturned on appellate review. (See cases in 1 Hatcher's Kansas Digest [Rev. Ed.] Appeal & Error, § 507.) This principle is not seriously disputed by the plaintiff who takes the position and urges with emphasis that much of the evidence introduced was incompetent, thus leaving the findings without substantial support.

No good purpose would be served by summarizing the testimony of the individual witnesses. Some twenty-two persons testified in all, including medical doctors, and it is sufficient for us to state at this time that there is evidence in the record to the following effect: For at least 12 years before his death, which occurred at about age 75, Joe Bernatzki suffered from diabetes and syphilis; in April, 1965, a medical examination disclosed that in addition to those two diseases Joe was also afflicted with arteriosclerosis, heart disease and emphysema. In June, 1965, Joe failed to recognize friends whom he had known for years, even when they identified themselves to him; the will of December 30, 1964, described property no longer owned by Joe, i. e., the account in a Kansas City savings and loan company which Joe had withdrawn July 10, 1962, and placed in the prison inmate fund. Joe's fellow inmates would often take advantage of him. Joe's doctor who had treated him

prior to his incarceration testified that in his opinion Joe was of unsound mind on December 30, 1964, when the will was executed. In the opinion of a second doctor Joe was mentally incompetent in June, 1965, some four months after the will was signed.

The test of testamentary capacity is whether the testator, at the time of making his will, knew what property he possessed, knew where he wanted his property to go and understood who were the natural objects of his bounty. (*In re Estate of Walter,* 167 Kan. 627, 208 P. 2d 262.) The focal point in time, where mental capacity is in issue, is the actual date of the will's execution, but evidence of capacity or incapacity, both before and after that date, is admissible and relevant in the investigation into mental competency. (*In re Estate of Walter,* supra.)

Judged by these elementary standards, we believe the evidence heretofore outlined is sufficient to support the trial court's finding that Joe Bernatzki lacked testamentary capacity at the time the will was executed on December 30, 1964.

It is strenuously argued, however, that the court admitted incompetent evidence which it considered in finding that Joe Bernatzki was of unsound mind at the time he executed the will. The evidence which has been challenged was of two types: (1) Prison medical records which were identified by Warden Crouse, and (2) testimony of two medical doctors appearing for the defendants whose opinions were based, at least in part, on the records identified by Crouse.

The medical records consisted primarily of (1) Joe's records of admittance to and treatment in the prison hospital on a number of occasions during his long incarceration, and (2) reports from the Kansas Reception and Diagnostic Center, where Joe was a patient from April 2, 1965, to April 9, 1965. One of the latter reports was a Medical Case Summary of Joe's physical examination at the Center which was signed by Richard D. Nabours, M. D.; the other report from the Center was a Psychiatric Diagnostic Report over the signature of Karl K. Targownik, M. D., Clinical Director of the Center.

In our view, the objections to the medical records are unsound. Under the provisions of K. S. A. 60-460 (*m*), business entries are admissible in evidence as constituting exceptions to the hearsay rule. This statutory rule, for all practical purposes, is the same as that embodied in the Uniform Business Records as Evidence Act.

Although we are not aware of any decision of this court squarely in point, our research reveals that in jurisdictions having statutes similar to ours, hospital records are generally held to be admissible in evidence. (32 C. J. S., Evidence, § 728b, pp. 1033-1036; Anno., 120 A. L. R. 1124, Hospital Record as Evidence; Anno., 44 A. L. R. 2d 553, Evidence—Hospital Records.)

The medical records of Joe's hospitalization and treatment in the penitentiary hospital, itself, clearly are admissible under the business entry statute, and we entertain the opinion that the medical records of the Reception and Diagnostic Center fall essentially within the same category. The Center was established by legislative enactment as a public institution under the general supervision, control and management of the state director of penal institutions. (K. S. A. 76-24a02, 24a04.) Its primary function, as set forth in K. S. A. 1968 Supp. 76-24a03 is to examine and study male felony offenders sentenced by the courts of this state so that each may be assigned to an appropriate penal institution. In addition, the director may make requisition on the warden of the penitentiary and may transfer any prisoner to the Center for examination and study. (K. S. A. 76-24a07.) When the examination and study is concluded the prisoner shall be assigned to a penal institution for confinement in like manner as new prisoners.

We have held the Kansas Reception and Diagnostic Center to be a state penal institution, and a transfer from the penitentiary to the center to be simply an administrative transfer within the penal system. (State v. Gordon, 203 Kan. 69, 453 P. 2d 80.) The record of examination and diagnosis made by a medical doctor of a patient transferred to the Center from the penitentiary for examination and study and then returned to the penitentiary is, in our judgment, properly included in the penitentiary records as a part of the patient's hospital record and is admissible in evidence as such.

No claim appears to be made that the doctors who testified on behalf of the defendants were not qualified in the field of medicine. Being medical experts they were entitled, by virtue of the provisions of K. S. A. 60-456 (b) (1), to express opinions on facts personally known to them or made known to them at the trial. In Casey v. Phillips Pipeline Co., 199 Kan. 538, 431 P. 2d 518, this court, in considering the import of this statute, declared:

". . . The statute requires that the expert witness base his testimony upon facts personally perceived by or known to him or made known to him

at the hearing. 'Perceived' means knowledge acquired through one's own senses (K. S. A. 60-459 [c]), and 'made known' refers to facts put in evidence. The rule must be considered in connection with K. S. A. 60-458 by which it is unnecessary for the witness to specify the data before expressing his opinion." (p. 546.)

Plaintiff cites two recent decisions of this court in support of her contention that the doctors' opinions were erroneously admitted. We think neither case is controlling. In *Love v. Common School District*, 192 Kan. 780, 391 P. 2d 152, we held that an appraiser employed in the county assessor's office could not testify to the fair market value of real estate based on the assessment made by an out-of-state firm employed to fix values for tax purposes. That case can readily be distinguished from the present one.

The situation in *Kreh v. Trinkle*, 185 Kan. 329, 343 P. 2d 213, was simply this: An X-ray report made by one doctor was offered in evidence through the identification of another doctor. For obvious reasons we held the exhibit was inadmissible.

Inasmuch as portions of the testimony heard by the trial court were offered by deposition, the plaintiff urges that we invoke the rule that where evidence is written or documentary in form, by way of deposition, stipulation or transcript, an appellate court will decide for itself what facts have been established, substantially as in an original action. (*In re Estate of Kemper*, 157 Kan. 727, 145 P. 2d 103; *White v. Turner*, 164 Kan. 659, 192 P. 2d 200; *North River Ins. Co. v. Aetna Finance Co.*, 186 Kan. 758, 352 P. 2d 1066.)

However, the rule is not without limitation. In discussing its application, this court, in *Boese v. Crane*, 182 Kan. 777, 324 P. 2d 188, spoke as follows:

". . . This rule, however, is not universally applied under all conditions. It has been applied where *all* the evidence is in written form (*White v. Turner*, supra); where the only oral testimony adduced has little, if any, bearing upon the principal question presented and all other evidence is in written form (*In re Estate of Kemper*, supra); but has not been applied to testimony written in form where the court would be called upon to disregard the testimony of one witness and accept as true the testimony of others (*Bolin v. Johnson County Nat'l Bank*, 160 Kan. 61, 159 P. 2d 477 [deposition testimony]; *Karlan Furniture Co. v. Richardson*, 182 Kan. 756, 324 P. 2d 180, No. 40,871, decided April 12, 1958 [stipulated testimony]; and see, also, *Akins v. Illinois Bankers Life Assurance Co.*, 166 Kan. 648, 203 P. 2d 180)." (p. 780.)

The facts of this case, as revealed in the record, do not call for application of the rule. For one thing, much of the evidence produced at the trial was oral. Furthermore, while the defendants'

medical testimony was presented by deposition, one of the plaintiff's own medical experts testified by deposition also, basing a contrary opinion in large part on the same medical records relied on by the defendants' experts. No challenge was made to the qualifications, competence or medical proficiency of the experts on either side. We find little here which would justify this court in disregarding the testimony of one set of experts at the expense of the other. That responsibility lay with the trial court which could assess the relative worth of the conflicting medical evidence against the backdrop of oral testimony given at the hearing.

We are obliged to conclude that the trial court's finding to the effect that Joe Bernatzki's will was void because of mental unsoundness was based on substantial competent evidence even though the evidence, on the whole, was highly conflicting. Due to this conclusion on our part, it would be a useless gesture to consider whether the will was procured by undue influence.

Reversible error does not appear and the judgment is affirmed.

SCHROEDER, J., dissenting: There is no arbitrary rule of law that the children of a deceased prison inmate at Lansing are entitled to his property, a will to the contrary notwithstanding.

The legal point in this case which in my opinion requires a reversal cannot be garnered from the court's opinion.

The trial court found Joe Bernatzki, the deceased prison inmate, to be mentally incompetent on the 30th day of December, 1964, the date he executed his last will and testament. Among the evidence considered by the trial court in making this finding was the opinion testimony of one expert medical doctor based upon the opinion of another expert, a psychiatrist. The psychiatrist's opinion was in the form of a report from the Kansas Reception and Diagnostic Center contained in the Kansas state prison files at Lansing, Kansas.

Rule No. 116 of this court (201 Kan xxxi) provides in part:

". . . If evidence was admitted over proper objections, and in his reasons for the decision the judge does not state that such evidence, specifying the same with particularity, was not considered, then it shall be presumed in all subsequent proceedings that the evidence was considered by the judge and did enter into his decision."

In the instant case the matter was heard by the trial judge who determined the facts, and he overruled the proponent's objection to the prejudicial evidence which was inadmissible under Kansas law.

The point which I think is material and controls the decision herein cannot be considered in isolation and apart from the entire record presented.

Of the twenty-two persons who testified in this case, including medical doctors, only two testified that in their opinion Joe Bernatzki was incompetent at the time he executed his last will and testament. These two witnesses were medical doctors by the name of Dr. Walter L. McKim and Dr. M. Dale Atwood.

The medical doctor who regularly attended Bernatzki in the penitentiary was Dr. Robert H. Moore, the medical director at the Kansas state penitentiary. He frequently saw Joe Bernatzki and attended his ailments, and in his opinion Joe Bernatzki was competent at the time he executed his will on the 30th day of December, 1964.

Dr. David G. Shivel, also a medical doctor, testified he did not know Joe Bernatzki, but after reviewing the depositions and medical records, he felt Joe Bernatzki could well have had the presence of mind during December, 1964, to know the objects of his bounty, the people he wanted to inherit his property, and the extent of the property he owned. He stated he would lean on the judgment of legal counsel.

John H. Murray, an attorney in Leavenworth, who took the last will and testament of Joe Bernatzki to him in the penitentiary for execution on the 30th day of December, 1964, testified he first met Joe Bernatzki on November 16, 1955, having represented him at that time in connection with a parole matter; that he had considerable correspondence with him and next saw Bernatzki on April 5, 1956. In Murray's opinion Bernatzki was legally competent to make a will at the time he executed his last will and testament. He read the will to Bernatzki, to which Bernatzki responded it was the way he asked that it be drafted. He asked Bernatzki if he was aware of the fact he was cutting out his children, and Bernatzki said he was. He asked Bernatzki the reason for this, and Bernatzki told him his children had more or less nothing to do with him at the time he was tried, and apparently made no effort to help him get out of the penitentiary.

It is to be noted the testimony of all medical doctors and John H. Murray was by deposition.

The files of the Kansas state penitentiary at Lansing included a report of Joe Bernatzki while at the Kansas Reception and Diagnostic Center, Topeka, Kansas, from April 2, 1965, to April 9, 1965. This was a little over four months after he executed the will in controversy. This report was held to be admissible in evidence under the provisions of K. S. A. 60-460 (*m*), the business entries exception to the hearsay rule. The report contained a medical case summary showing the results of Joe Bernatzki's physical examination and recommendations by Richard D. Nabours, M. D., dated April 7, 1965. The report also contained a psychiatric diagnostic report showing the findings of a psychiatrist together with his conclusions which are stated as follows:

"The syndrome of organic brain disorder is a basic mention condition characteristic of diffuse impairment of brain tissue function from any cause. These disorders are characterized by a basic syndrome consisting of impairment of orientation, impairment of memory, impairment of all intellectual functions (comprehension, calculation, knowledge, learning, etc.), impairment of judgment, and liability and shallowness of affect.

"This syndrome may be the only mental disturbance present or may be associated with psychotic manifestations, neurotic manifestations, or behavioral disturbance.

"The prisoner definitely suffers from such a disorder with psychotic and behavioral disturbances.

*Recommendations*

"From medical and psychiatric point of view this man needs an environment where his needs can be met. There is a strong indication from a medical point of view that this man be on a salt free diet and on a diabetic diet. His moderate anxiety and worrying moods with mild depression can be very easily managed with the modern tranquilizing drugs. Since there are definite symptoms of an organic brain syndrome with senile deterioration, he will need structure and guidance. There is an absolute must that this man will be under supervision and seen by a medical doctor at least once a week."

This report is dated April 7, 1965, and was signed by Karl K. Targownik, a psychiatrist, as clinical director of the diagnostic center.

Dr. McKim testified by deposition that he was remotely acquainted with Joe Bernatzki; that he had thumbed through the records of Dr. Atwood of Kinsley, and had practiced in the same building with Dr. Atwood. He also testified he had examined the medical records contained in the deposition of Sherman H. Crouse and the psychiatric evaluation.

Based upon the total medical records and the psychiatric evaluation to which the witness had access, he stated that Joe Bernatzki in his opinion in October, 1964, was of unsound mind. *No hypothetical question was put to this witness concerning the basis of his opinion.*

When asked by counsel if Bernatzki was continuously of unsound mind Dr. McKim answered:

"I would put it this way: You have to say he was probably of unsound mind at that time; it may have been a few minutes, here; an hour, there; a day, here and there, where you might say this man is fairly sound of mind— he remembers what he's got and so on like this; at other things [times] there would be big holes in his memory."

On further examination Dr. McKim said:

"In business transactions or something involving the higher mental processes, this gentleman may never have been competent. He had essentially no education."

Dr. Atwood testifying by deposition said Joe Bernatzki was his patient and identified records of visits with him on February 16, 1954, March 3, 1954, and on February 27, 1958. On March 3, 1958, he started treating him for syphilis, but there is no record that Dr. Atwood saw Joe Bernatzki at any time after June 2, 1959.

Dr. Atwood reviewed the medical records in the deposition of Sherman H. Crouse, consisting of the medical case summary of Dr. Nabours and the psychiatric report contained in the Kansas Reception and Diagnostic Center report. No hypothetical question was put to Dr. Atwood, but he was permitted to testify that in his opinion on December 30, 1964, Joe Bernatzki was of unsound mind and an incompetent person. He acknowledged that a competent physician giving a competent opinion could perhaps have influence on his opinion.

On cross examination he testified:

"Q. If you were going to base your medical reputation that Mr. Bernatzki was of unsound mind from this neurological examination, would you base it on this report?

"A. Well, of course, you wouldn't form a conclusion on one report. After all, a doctor sees a patient over a period of time and he knows that patient or else he refers this patient and gets somebody else's opinion.

"Q. Are you ready to base your medical reputation on the fact Mr. Bernatzki was of unsound mind April 7, 1965, based on this medical report?

"A. Yes, I would say that.

"Q. Now, you say that you are *willing to stake your reputation on that?*

"A. Yes."

It is to be noted counsel for the appellant objected as to the admissibility of the report from the Kansas Reception and Diagnostic Center. Among other things, he specifically objected to the conclusions stated therein prior to the acceptance of these documents in evidence.

The opinions of both Dr. McKim and Dr. Atwood were based in part upon the report from the Kansas Reception and Diagnostic Center which contained the conclusions heretofore quoted without any indication in the record as to a limitation of their use by such witnesses.

The court approved the admissibility of this kind of opinion testimony based upon the provisions of K. S. A. 60-456 (*b*) (1), which states:

"(*b*) If the witness is testifying as an expert, testimony of the witness in the form of opinions or inferences is limited to such opinions as the judge finds are (1) *based on facts* or data perceived by or personally known or made known to the witness at the hearing. . . ." (Emphasis added.)

It may be said Dr. McKim and Dr. Atwood testified concerning matters made known to them at the hearing, but to the extent that these matters consisted of the conclusion and opinion in a psychiatrist's report, they go beyond the authorization in the statute.

If it be assumed the psychiatrist's opinion concerning the mental condition of Joe Bernatzki on the 5th day of April, 1965, is a fact, then there is conflicting evidence in the record on this matter. Under these circumstances a hypothetical question is necessary to lay a proper foundation for such opinion testimony. K. S. A. 60-456 and 60-458 were not intended to effect a change in the prior law of this state. In Gard, Kansas Code of Civil Procedure Annotated, § 60-458, pp. 453, 454, it is said:

". . . But it is the established rule in Kansas and elsewhere that where the facts are disputed and the opinion is based on facts outside the personal observation of the witness, a hypothetical question is necessary to present the theory upon which the opinion is based. See Tefft v. Wilcox, 6 K 46; Shouse v. Consolidated Flour Mills Co. 132 K 108, 294 P. 657. . . ."

Weighing the evidence of Dr. Targownik, assuming the report is properly in evidence, is the province of the trier of the facts, and it is not the function of another expert witness at the trial to weigh such report and base his opinion concerning the mental condition of Joe Bernatzki on the 30th day of December, 1964, in part upon conclusions made by Dr. Targownik. (See *The People v. Black*,

367 Ill. 209, 10 N. E. 2d 801.) To this extent the opinions of Dr. McKim and Dr. Atwood invaded the province of the trial court. Squarely in point is *Love v. Common School District,* 192 Kan. 780, 391 P. 2d 152, which held in substance that the opinion of an expert appraisal witness could not be based upon the valuation of property made by a third party even though the figures from such appraisal were recorded on a document filed in a public office.

An analogous situation is presented in the law of torts where liability cannot be predicated on an inference based upon an inference, or on a presumption based upon a presumption. (*Emigh v. Andrews,* 164 Kan. 732, 736, 191 P. 2d 901.)

It is of interest to note Elizabeth Stiebe, one of the children of Joe Bernatzki and a contestant of his last will and testament, testified that if her father had left a will giving all of his property to her and her sister and brother, he would have been competent to make this will.

Another point made by the trial court in its findings of fact was that on December 4, 1964, Joe Bernatzki without the assistance of counsel, caused to be filed with the clerk of the district court of Edwards County his petition for relief pursuant to K. S. A. 60-1507, using the form suggested by the Supreme Court Rules. When the petition was eventually heard in the district court on the 23rd day of June, 1965, Bernatzki was personally present in court. While Bernatzki was testifying in person to support his 1507 motion, the trial judge who heard the instant case on his own motion made a finding that Bernatzki did not know why he was in court and forthwith dismissed his petition, but without prejudice. The court stated, however, it would not entertain a similar petition until Bernatzki had been examined and the court assured he had sufficient mental capacity to comprehend his position and prosecute his petition on the grounds stated therein. In view of this finding made by the trial court herein, perhaps the trial judge should have disqualified himself in this case. (See *In re Estate of Hupp,* 178 Kan. 672, 291 P. 2d 428.)

It is respectfully submitted the judgment of the trial court should be reversed and remanded for a new trial on the ground that it considered opinion evidence erroneously admitted in the trial of the case to the prejudice of the appellant.