(661 P.2d 1)
No. 54,455

DAVID WEBB, SR., *Appellee*, v. CITY OF LEAVENWORTH, KANSAS, *Appellant*.

Opinion filed April 7, 1983.

*Robert D. Beall*, of Leavenworth, for appellant.

*Arthur W. Solis*, of Kansas Commission on Civil Rights, of Topeka, for appellee.

Before SWINEHART, P.J., ABBOTT and MEYER, JJ.

ABBOTT, J.: This is an employment discrimination case in which the City of Leavenworth appeals the district court's affirmance of an award by the Kansas Commission on Civil Rights of $326.28 for lost wages and $1,000 for mental anguish to David Webb, Sr.

This case arises under the Kansas Act Against Discrimination, K.S.A. 44-1001 *et seq.*, as a result of the interview process and employment of a street foreman in October 1978 by the City of Leavenworth.

The City posted a job vacancy notice to which eight men responded. Because of a personnel regulation which encourages promotion from within, the decision was made to interview only the four applicants already employed by the City of Leavenworth. Of these four, complainant David Webb and Bill Moore are black and Jerry Hansen and Wayne Welch are white.

The interview committee was composed of three white men: Harold Anderson, assistant city manager and personnel director for the City; Roy Metz, then acting superintendent of streets; and Eugene W. Bennett, director of public works. Bennett asked each interviewee five specific questions and rated them according to their responses. The others asked no predetermined questions. Welch was hired.

Webb filed a discrimination complaint with the Kansas Com-

mission on Civil Rights (KCCR) January 31, 1979, alleging he had been denied promotion because of his race in violation of K.S.A. 44-1009(a)(1). Webb voluntarily resigned his position with the City in April 1979 and accepted a higher paying job.

An evidentiary hearing was held before Charles S. Scott for the KCCR in October 1980. Hearing Examiner Scott found racial discrimination. He awarded Webb $326.28 in lost wages and $1,000 for mental pain and suffering. The City made timely application for rehearing which was denied, then perfected its appeal to the district court where, on stipulation of the parties, the case was submitted on the evidentiary record developed before the KCCR. The district court affirmed the KCCR order. The City appeals to this court, raising two issues.

The City first contends the district court erred in finding its employment practices denied David Webb, Sr., a promotion because of his race.

Appellee, in his brief, directs this court's attention to the scope of appellate review which is a determination whether there is substantial competent evidence to support the trial court's decision on de novo review of the KCCR proceedings. As a general rule, when a case comes before the trial court on an agreed stipulation of facts and documentary evidence, the appellate court has the same opportunity to consider the evidence as the trial court. *Cosgrove v. Young,* 230 Kan. 705, 642 P.2d 75 (1982); *Stith v. Williams,* 227 Kan. 32, 605 P.2d 86 (1980); *Victory Nat'l Bank of Nowata v. Stewart,* 6 Kan. App. 2d 847, 636 P.2d 788 (1981). An exception to the rule has arisen in cases where some of the evidence presented at trial was oral. See, *e.g., In re Estate of Bernatzki,* 204 Kan. 131, 136-37, 460 P.2d 527 (1969).

The court went farther in *Karlan Furniture Co. v. Richardson,* 182 Kan. 756, 324 P.2d 180 (1958), a replevin action to recover a television set sold on a conditional sale contract. Evidence was presented to the district court in documentary form but also included transcripts of testimony of witnesses which the trial court weighed. In response to appellant's argument that the appellate court should by examination of the documentary evidence decide for itself what the facts established, the Supreme Court noted it could not "disregard the testimony of one witness and accept as true the testimony of others but [that it] should follow the ordinary rule, giving credence where the trial court

gave credence, unless its findings of fact are illogical, improbable and unwarranted." 182 Kan. at 760.

Plaintiff alleges discriminatory treatment in the City's failure to hire him as street foreman. Our Supreme Court in *Woods v. Midwest Conveyor Co.*, 231 Kan. 763, 766, 648 P.2d 234 (1982), adopted the three-prong burden of proof analysis used in federal Title VII decisions:

"First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant 'to articulate some legitimate, nondiscriminatory reason for the employee's rejection.' [Citation omitted.] Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 252-253, 67 L.Ed.2d 207, 101 S.Ct. 1089 (1981).

See also *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 804, 36 L.Ed.2d 668, 93 S.Ct. 1817 (1973).

The hearing examiner and the trial court found that Webb presented a prima facie case of discrimination and that the City failed to articulate a legitimate, nondiscriminatory reason for his rejection.

Webb's complaint focuses on the City's waiver of necessary qualifications which he alleges that only he and the other black applicant possessed. Promotion certificate No. 181 listed "three years of supervisory experience" as a necessary qualification. Webb worked for the City from 1970-75 and from 1977-79. He began work as a laborer and received promotions to truck driver, light equipment operator, then heavy equipment operator. In 1971 or 1972 he began supervising the slurry seal program, a seasonal resurfacing project which Webb estimated extended from May to October. No testimony was developed regarding the second black applicant, Bill Moore, other than the fact that he was formerly in charge of the sign shop. Although applicant Moore is mentioned and some comparative employment statistics appear in the record, Webb's case was grounded on his own discriminatory treatment rather than conduct leading to a disparate impact on all blacks.

The interview committee defined "supervisory experience" as rating authority over another and determined none of the applicants possessed that experience. Webb's duties in the slurry seal

program were characterized as "lead" rather than "supervisory." Webb, admittedly, did not fill out efficiency ratings for the slurry seal crew.

The waiver of the supervisory experience requirement, given Webb's employment background, and the subjective nature of the interview process seem sufficient to establish a prima facie claim of discrimination and to shift the burden of going forward with the evidence to the City. *Woods v. Midwest Conveyor Co.,* 231 Kan. at 767.

The City explained its waiver of the requirement by noting there are only two official supervisory positions in the street department, those of superintendent and foreman. Given the policy of promotion from within, by definition applicants for the foreman's position would have no supervisory experience. Roy Metz, street superintendent and former street foreman, had been a lead man with no rating experience at the time he became street foreman. It is unclear from the transcript whether any weight was placed on his having been a "lead" man.

In addition to waiver of the supervisory experience requirement, the committee also used subjective criteria in its evaluation. Federal decisions have held subjective evaluations suspect, meriting close scrutiny by the courts. See, *e.g., Royal v. Missouri Highway and Transp. Com'n,* 655 F.2d 159 (8th Cir. 1981); *Stewart v. General Motors Corp.,* 542 F.2d 445 (7th Cir. 1976), *cert. denied* 433 U.S. 919 (1977); *Barnett v. W. T. Grant Company,* 518 F.2d 543 (4th Cir. 1975). In the present action, only one of the interviewers, Eugene Bennett, asked specific questions. Harold Anderson testified there were no formal selection criteria. He was looking for an enthusiastic foreman who could combat morale problems. According to Anderson, the successful applicant had good ideas on preventive maintenance and employee management.

Interviewer Metz pointed to some shortcomings in Webb's records. Webb was not as skilled as Welch in handling equipment and had once refused to report to work for a snow callout. Exhibits before the hearing examiner showed Welch had been employed by the street department from 1971-73 and from 1976 to the time of hearing with generally good evaluations. Both Webb and Welch met or exceeded minimum standards in job performance. Webb's file did contain a 1972 reprimand for fail-

ure to report to work. His 1975 performance evaluation report recommended as future goals: (1) slow down to do a better job and (2) attendance and being late for work. One of the interviewers had been Webb's foreman and testified Webb was late to work from time to time, and if he took a Thursday off, he would not report to work on Friday and would not call in. Other reprimands for absences and failure to comply with orders occurring after the hiring decision could not have been considered in that decision.

On this evidence the hearing examiner concluded the employer failed to rebut the prima facie case of discrimination. In *Texas Dept. of Community Affairs v. Burdine,* the United States Supreme Court set forth the following criteria by which to judge a defendant's burden of producing evidence:

"It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff. To accomplish this, the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection. . . ." 450 U.S. at 254-55.

"[T]he employer need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus. . . ." 450 U.S. at 257.

Even under our limited scope of review we are of the opinion the City, as a matter of law, met its burden of going forward with the evidence and producing admissible evidence which would allow the trier of facts to rationally conclude that the employment decision had not been motivated by discriminatory intent. Webb's work record, as personally known to one of the interviewers, was that he was often late to work, missed workdays without calling in and on one occasion refused to report to work during an emergency snow callout. In addition, he was considered to be rough on equipment. Webb did not deny or attempt to explain these complaints.

The ability to supervise others has a relationship to past performance. If Webb had been selected, he would be supervising former co-employees who would be aware of his work attendance record. The interviewers testified they were of the opinion the person hired had more drive and had the ability to get the job done. In our opinion, the City presented sufficient evidence as a matter of law to shift the burden back to Webb to prove the reasons were pretexts for discrimination, and Webb has failed to do so.

The second issue is moot in view of our determination that the trial court erred in its finding that the City's employment practices denied Webb a promotion because of his race. In any event, after the briefs in this case were filed our Supreme Court determined that pursuant to K.A.R. 21-45-21 the Kansas Commission on Civil Rights is not authorized to award damages (other than back pay) and that such an award is "void." *Woods v. Midwest Conveyor Co.*, 231 Kan. 763.

Reversed.