No. 38,100

In the Matter of the Estate of Elizabeth Mead, Deceased, J. I. McDonald, et al., *Appellants,* v. WILLIAM T. YATES, et al., *Appellees.*

(226 P. 2d 831)

Opinion filed January 27, 1951.

*Karl V. Shawver* and *Karl V. Shawver, Jr.,* both of Paola, argued the cause and were on the briefs for the appellant.

*L. Perry Bishop,* of Paola, and *Ray S. Pierson,* of Burlington, argued the cause, and *Bernard L. Sheridan* and *J. M. Sullivant,* both of Paola, and *William A. Buckles,* of Burlington, were with them on the briefs for the appellees.

The opinion of the court was delivered by

THIELE, J.: This is an appeal from a judgment of the district court, holding that a purported last will and testament was not entitled to probate.

The purported will was made by Elizabeth Mead on October 4, 1948. Under its terms she devised to her niece, Elizabeth Carter, a tract of real estate in Paola, Kansas, and bequeathed and devised to John I. McDonald and Letha McDonald, husband and wife, all of her other property. John I. McDonald was named as executor.

On December 17, 1948, John I. McDonald filed his petition in the probate court for the admission of the will to probate, and that court ordered that the petition be heard on January 17, 1949. The hearing was twice continued and on March 4, 1949, William T. Yates, a nephew and Elizabeth Carter, a niece of the decedent, filed their answer and objections to the petition for probate, alleging, in substance, that the execution of the purported will was procured by undue influence of John I. McDonald and Letha McDonald; that the McDonalds were the principal beneficiaries under the will and caused it to be prepared and that Elizabeth Mead had no independent advice with respect to the will; that Elizabeth Mead was ill and her mind was so affected by the illness and otherwise that she was mentally incompetent; that the will was not executed in the manner required by law and that Elizabeth Mead in fact died intestate. At the hearing the proponents objected to any evidence by the respondents for the reason they had not been granted additional time in which to file a defense. The probate court took this objection under consideration, but the journal entry discloses no ruling. That court found in favor of the proponents and ordered the will admitted to probate. The objectors appealed to the district court. At the trial in the district court the proponents moved that the answer and objection filed by Yates and Carter be stricken from the file. This motion was denied, and the issues presented were fully tried. The district court made findings of fact and conclusions of law which need not be set out at length. In a summary way it may be said the trial court found that Elizabeth Mead, at the time the will was made, was a very senile, sick old lady, weak in body and mind and that on October 4, 1948, (date of the will) she did not have mental capacity to know who were her relatives nor the nature and extent of her property. The trial

court also found facts relating to the relationship between the McDonalds and Elizabeth Mead, the manner in which the will was prepared and that it was prepared by attorneys for the principal beneficiaries. As a matter of law the trial court found that on October 4, 1948, Elizabeth Mead did not have capacity to make a valid will; that the will was prepared by attorneys of the principal beneficiaries; that in making the will Elizabeth Mead had no independent advice and the will should not be admitted to probate. The proponents' motion to modify and vacate certain findings of fact, their motion to modify and make new conclusions of law and their motion for a new trial were each denied, and in due time they perfected an appeal to this court.

Appellees challenge the right of appellants to be heard in this court on some of their specifications of error for the reason no copy of their motion for a new trial was included in their abstract. The abstract, however, does show the journal entry denying the motion for a new trial, appellants have been permitted to file copies of the motion for a new trial and the appeal will be considered without diminution on that account.

Generally speaking, appellants have grouped their specifications of error and presented them under four questions. Before taking up those questions we note appellants' contention that the trial court erred in not striking appellees' answer and objections from the files for the reason they were belatedly filed in the probate court and not in conformance with G. S. 1947 Supp. 59-2210. In our opinion this contention cannot be sustained. Under G. S. 1947 Supp. 59-2408 the district court, in hearing an appeal from the probate court "shall allow and may require pleadings to be filed or amended." That section further provides that the right to file new pleadings shall not be restricted by the failure to file pleadings in the probate court, nor shall the trial in or the issues to be considered by the district court be abridged or restricted by any failure to appear in the probate court. Not conceding that it is true, but assuming that appellants' objection in the probate court was good, it did not prevent an appeal by the defeated parties. When the motion to strike the answer and objections was made in the district court and denied, the effect was to permit them to stand either as though they were ordered filed by that court or that appellees had made a request to then file the same.

Appellants' first three questions pertain to whether the evidence

disclosed that the McDonalds were the principal beneficiaries under the will; that they caused the will to be prepared; that the testatrix read or knew of the contents of the will and had independent advice with reference thereto. Consideration of these three questions however becomes unnecessary unless it be determined that the trial court erred in its conclusion that Elizabeth Mead did not possess testamentary capacity, and appellants recognize that for they state the principal question is whether the trial court was justified in accepting testimony of witnesses who did not see Mrs. Mead during the day of October 4, 1948, and not the testimony of six witnesses who saw Mrs. Mead on that day and all of whom testified she was mentally competent.

In a preliminary way it may be said there is no dispute that under our decisions the test of competency to make a will is that the testator know and understand what property he has, know about his relatives and others who may be the objects of his bounty and make disposition of his property with understanding and reason. See e. g. *In re Estate of Gereke,* 165 Kan. 249, 195 P. 2d 323; *In re Estate of Cross,* 166 Kan. 318, 201 P. 2d 1052, and cases cited. It is also settled that this court is concerned only with evidence that supports or tends to support the findings made by the trial court and not with evidence in conflict therewith and if there is substantial evidence to support the findings this court is precluded from disturbing them. See e. g. *In re Estate of Walker,* 160 Kan. 461, 163 P. 2d 359; *In re Estate of Harris,* 166 Kan. 368, 372, 201 P. 2d 1062, and cases cited.

To avoid the force of the last stated rule, appellants direct attention to the fact that the testimony of two witnesses consisted of reading the testimony given by them in the probate court and assert that it is the responsibility of this court to decide what the facts are from this evidence, citing *In re Estate of Davis,* 168 Kan. 314, 212 P. 2d 343, and *In re Estate of Schippel,* 169 Kan. 151, 218 P. 2d 192. Reference to those cases will disclose that in the trial in the district court, the only evidence offered was the transcript of the record made in the probate court. In such circumstances, we have held it is our duty to determine the facts. See *In re Estate of Kemper,* 157 Kan. 727, 734, 145 P. 2d 103, and cases cited. The rule contended for by appellants can have no application here for at least fifteen other witnesses testified personally to facts bearing on the testamentary capacity of Mrs. Mead. All of that testimony had to

be considered by the trial court in determining the issue, and we may not review the testimony of the two witnesses introduced by reading a transcript of their testimony in the probate court and reach a contrary conclusion.

By reason of the issues raised by the pleadings the evidence covered not only the question of testamentary capacity, but also testimony tending to show or dispute exercise of undue influence, the fact a confidential relation existed between Mrs. Mead and the McDonalds, the circumstances leading up to the preparation of the will and as to its execution. Our resumé of the findings, while not complete, is generally limited to those parts dealing with testamentary capacity. The findings include the following:

Elizabeth Mead was an intelligent woman who had taught school many years. After her husband's death she continued to live on the farm where they had lived for many years. At the time of her death she was about 83 years old. In her later years she had become senile and emaciated and although she had adequate clothing she dressed very poorly and subsisted on a meager diet. She used tin cans for cooking utensils and for night vessels and on occasions got them interchanged. On September 24, 1948, she went to the home of the McDonalds and remained there until her death. On September 26 she became very ill and a doctor was called. At that time her condition in addition to senility was an asthmatic condition from which she had suffered for years. The doctor's treatment, among other things, included the administration of sedatives. She grew worse and on October 1 her life was despaired of, her breathing was labored, her mouth open, her eyes glassy and she was in a critical physical condition. On the evening of October 4 Mrs. Mead was very still. She kept pulling at the bed covers, reaching out to get something she imagined she saw in front of her, talking of a man with a big red nose in a chair, saw pictures on the wall. She was very ill and in bad shape both mentally and physically. When her niece appeared on October 2 and visited her on October 3, she confused her with her niece's mother. Some of the time she recognized friends and some of the time she did not. A number of witnesses testified that in their opinion and particularly on October 4 she was incompetent and a number testified she was not, but it was clearly evident that she was a very senile, sick old lady, weak in body and mind. On the morning of October 4 Mrs. Mead did not have mental capacity to know who were her blood relatives nor the nature and extent of her property.

As has been heretofore stated, appellants moved to modify and vacate certain findings of fact, the motion being denied. We find it unnecessary to review this motion or the ruling at length. Insofar as mental capacity is concerned, most of the end sought was to have the trial court find favorably to the appellants' contention or to have included matter which was rather immaterial to that issue. Insofar as the motion raised the question that the findings are not supported by the evidence, a review hereafter made of the evidence as included in the abstract and counter-abstract discloses ample support.

Appellants made no contention that the will was executed during a lucid interval on the part of Mrs. Mead, possibly for the reason that would be a concession of a lack of capacity before and after the event. Rather their contention seems to be that the objectors did not produce sufficient proof. They direct attention to a sentence in *In re Estate of Smith,* 168 Kan. 210, 212 P. 2d 322, reading:

"Appellants are correct in contending that while testimony concerning the mental condition of the testatrix shortly before and after the execution of the will may be considered, the evidence pertaining to her condition on November 25 is of primary importance." (l. c. 215.)

and argue that six witnesses, who were present when Mrs. Mead executed the will testified that she was competent, while those testifying to the contrary did not see her between 6:00 a. m. and 6:00 p. m. of that day, and that therefore the testimony of the six that she was competent must be accepted. But in considering the testimony of those six witnesses, the trial court was permitted to and doubtless did give consideration to the fact that those witnesses included the two McDonalds, who were beneficiaries, their daughter and her husband, and the two witnesses to the will, both of whom had come to the McDonald home at the request of McDonald and his son-in-law, who testified he communicated Mrs. Mead's wishes, expressed to him during the night of October 3, to a lawyer who drew the will. Insofar as the two witnesses to the will are concerned, it is clear they were present at the request of Mr. McDonald and possibly his son-in-law; that while they were present the will was not read to Mrs. Mead nor did she read it herself; that she signed the will and requested them to sign it and each did so; that nothing was said about the contents of the will nor about her property or relatives. Simply because the six witnesses so testified, was the trial court precluded from considering other evidence? We think not. On behalf of the appellants

Dr. Hartwell, one of the witnesses whose probate court testimony was received in evidence, testified that he saw Mrs. Mead on October 2 and administered about one-sixth grain of morphine, phenobarbitol and ephedrine; that morphine is a narcotic and would cause her to become drowsy and sleepy and while she was under its influence she probably would not know anybody; that he saw her again on October 5; that he first saw her on September 26 and prescribed morphine, adrenaline and ephedrine, giving them all at the same time every four hours (other evidence disclosed Mrs. Mead was given these medicines every four hours at times here involved); that he saw her October 2 and there was a marked change for the worse. He recalled a conversation with Stella Allen, which he thought was later than October 5, in which he told her Mrs. Mead was of unsound mind; that there was quite a bit of time when she was mentally unsound and, "I don't know when she commenced to get unbalanced to tell the truth about it." The respondents offered the testimony of various witnesses, whose testimony will not be set forth in detail. None of them saw Mrs. Mead between the hours of 6:00 a. m. and 6:00 p. m. of October 4, but they did testify in detail to matters occurring just before and just after those hours and that she suffered from hallucinations; that in their opinion she did not have capacity to recognize her friends and relatives at all times; that she was in a bad way physically and confused mentally, and did not have capacity to make a will. Another medical witness, whose qualifications were admitted, in response to a hypothetical question to which no objection was made, testified that considering Mrs. Mead's physical condition, age and the treatment given, on October 4, 1948, she probably would not be mentally competent to know her relatives and the nature and extent of her property.

The trial court had the entire picture before it. With the exception of two witnesses, it saw the witnesses, had an opportunity to note their interest in the outcome, observed their demeanor while testifying, and from all of the testimony decided the issue in favor of the objectors, and there being substantial evidence to warrant its findings, they are conclusive on appeal.

Appellants complain that the trial court erred in admitting incompetent evidence and in rejecting competent evidence. No specific claim is made as to admission of evidence. There is no showing that the claimed rejected evidence was produced on the hearing of the motion for a new trial and the question is not

properly before us. There is some contention that cross-examination of witnesses was unduly restricted. We shall not make a detailed statement of the instances relied on as our examination of the record convinces us there was no ruling prejudicially erroneous.

As has been previously indicated, in view of our conclusion that the trial court did not err in finding that Mrs. Mead lacked testamentary capacity on October 4, 1948, it is unnecessary that we consider any questions as to undue influence or who was the principal beneficiary under the will.

The trial court did not err in finding that Elizabeth Mead lacked testamentary capacity on October 4, 1948, the date her purported will was executed, and its judgment denying probate of the will is affirmed.