No. 48,827

In the Matter of the Estate of Clarence Victor Ziegelmeier, Deceased, AYESHA A. WATT, SARAH I. PROTZMAN, STEUART A. ZIEGELMEIER, CARL ERNEST ZIEGELMEIER, WILLIAM R. ZIEGELMEIER, VERA M. SADDLER and DOROTHY MAYE METZLER, *Appellants,* v. VICTOR H. ZIEGELMEIER and THE FARMERS AND MERCHANTS STATE BANK OF COLBY, KANSAS, Co-Executor and Co-Administrator, c.t.a., respectively, of the Will of Clarence Victor Ziegelmeier, Deceased, *Appellees.*

(585 P.2d 974)

Opinion filed October 28, 1978.

*James A. Spencer,* of Oakley, argued the cause, and *Douglas C. Spencer,* of Oakley, *Sam W. G. Lowe, Keith R. Willoughby* and *H. David Starkey,* all of Colby, were with him on the brief for the appellants.

*Robert A. Creighton,* of Atwood, argued the cause and *Forest W. Brown,* of Atwood, was with him on the brief for the appellees.

The opinion of the court was delivered by

SCHROEDER, C.J.: This is an appeal from an order admitting to probate the last will and testament of Clarence Victor Ziegelmeier on July 12, 1974. The appellants herein are Ayesha A. Watt, Sarah I. Protzman, Steuart A. Ziegelmeier, Carl Ernest Ziegelmeier, William R. Ziegelmeier, Vera M. Saddler and Dorothy Maye Metzler, children of the deceased and devisees under the will. The appellee is Victor H. Ziegelmeier (hereafter Victor), co-executor of the will and eldest son of the deceased to whom a substantial bequest was made.

The issues presented concern the testamentary capacity of the deceased at the time of execution; undue influence by Victor as the principal beneficiary; and ambiguity in the will itself.

Clarence Victor Ziegelmeier died on May 19, 1974, at the age of 91. He was preceded in death by his wife, Josephine, on December 5, 1972. At the time of his death he owned seven quarters of farm land in Thomas and Sherman counties, appraised at $313,300; a home and several lots in Gem, Kansas; $27,000 in checking accounts; and various personal property.

During the last years preceding his death Clarence was unable and did not leave his home in Gem, Kansas. His leg had been crushed in an accident, and arthritis left him crippled. Following his discharge from the army Victor had returned home and entered the family farming business. From 1946 until 1949 he farmed the land with his brother Carl Ernest. Thereafter he farmed all of his father's land with the help of his own family and paid his father a one-third crop rent. The trial court found Victor assisted the testator in conducting his business and was his father's attorney-in-fact during the last year and one-half of his life.

On January 2, 1973, the testator gave Victor a typewritten power of attorney dated December 31, 1972, and told him to take it to the Farmers and Merchants State Bank in Colby, Kansas, to be notarized. Victor was told at the bank the document should be taken to an attorney. Victor then went to Mr. Gerald Stover who had been the testator's attorney for over fifteen years. Upon reading the power of attorney Mr. Stover testified he realized the testator was attempting to make a disposition of his property after death and therefore phoned him to explain.

Mr. Stover prepared a new power of attorney, and he delivered it to the testator for his signature the next morning on January 3, 1973. When Mr. Stover arrived at the house all four of the testator's daughters and his son, Victor, were present. Mr. Stover and the testator had a conference in the living room while the children remained in the kitchen. During this conversation the testator expressed a desire to have a will.

Mr. Stover testified the testator stated he wanted his property to be divided equally among his children, but he indicated Victor should be able to farm the land for ten years and have the option

of buying it during this time period for $100 per acre. Mr. Stover then described the unfavorable federal estate tax consequences to the testator and persuaded him that a five year option was more reasonable.

Ten days later on January 13, 1973, Mr. Stover returned to the testator's home with the will. Three of the appellants, Carl Ernest, Vera Saddler, and Ayesha Watt, were present. Victor and his family were in Denver, Colorado. During this visit Mr. Stover read and explained the terms of the will. Pertinent portions of the will provide:

"THIRD: For a period of five years from the date of my death, I grant unto my son, Victor H. Ziegelmeier, the right to purchase any part or all of my farm land for the sum of $100.00 per acre. The said Victor H. Ziegelmeier may exercise this option by giving notice in writing to the Co-Executor, William R. Ziegelmeier, at any time before the expiration of five years after the time of my death. In this connection, I direct that my estate be kept open until such time as my son Victor H. Ziegelmeier has either exercised this option or until five years have expired after my death. I direct that the said Victor H. Ziegelmeier be allowed to continue on as the farm tenant. In the event the option is exercised after a crop is planted and before it is harvested, the landlords share of the crop shall be prorated between my estate and my son, Victor, in accordance with the portion of the growing period which the land is owned by my estate and by my son.

"FOURTH: All the rest and residue of my estate, wherever situated, I give, bequeath, and devise unto my children; Ayesha A. Watt, Sarah I. Protzman, (Steuart) A. Ziegelmeier, Victor H. Ziegelmeier, Carl Ernest Ziegelmeier, William R. Ziegelmeier, Vera M. Saddler, and Dorothy Maye Metzler, share and share alike."

All three of the children present made offers to buy the farm land for a greater price than the option to Victor in the will. While the testimony is conflicting, the children claim the testator instructed Mr. Stover to throw the will "in the wastebasket behind the stove." Nevertheless, Mr. Stover returned the unsigned will to his office in Colby, Kansas.

On Monday, February 26, 1973, the testator telephoned Mr. Stover and requested he bring the will to Gem. Mr. Stover was unable to personally deliver the instrument but explained the procedure for execution. He then suggested Victor or someone should be sent to town to pick up the will. Thereafter Victor picked up the will and returned it to his father.

The next day the testator summoned three neighbors, Robert Moore, Maude Etherton, and Harold McGuire, as witnesses. All testified he explained to them why they were assembled in his

home. He instructed all of them to read the will and showed them where to sign and date the instrument. In the presence of all the witnesses the testator initialed the spelling change of the name of his son Steuart; changed his place of residence from Colby to Gem; changed the day and month on the will; and signed the instrument. During this time Victor was preparing lunch in the kitchen and did not actively participate in the execution of the will. Victor then returned the will to Mr. Stover's office where it remained until his father's death.

Following the execution of his will, the testator told at least two of his children he had completed his last will and testament. He purportedly stated to them he had left his property equally to his children.

The testator's gross estate was valued at $359,367.17. The preliminary estimate of expenses of administration and debts of the testator amounted to $26,249 and the federal estate tax totaled $68,437.82. The appellants contend on appeal, as they did at the trial level, if the 1,120 acres of farm real estate is sold to Victor for $112,000, it results in an actual gross estate of $154,562.17 and a distributable estate of $59,562.17. They claim the net result is they each realize a share of $7,484.32, while Victor's share is worth the present value of the real estate plus his distributive share or $320,784.32.

The trial court found:

"19. The land owned by the deceased at the time he executed his will was a practical farming unit. He had spent many years in putting the unit together. He knew it was worth much more per acre to have the unit. He met the problem of equal distribution to each of his children and at the same time fixing a price Victor could pay. He fixed such a price. It did not give each child an equal share. The land, the problem, and the children were those of Clarence Victor Ziegelmeier. His solution was in the will. The fact others are not happy with his solution is unimportant."

The court then concluded as a matter of law that the testator was of sound mind when he executed his will, and he was not under undue influence. It then determined the will was executed and witnessed according to Kansas law and sustained the order of the probate court admitting the will to probate. Appeal has been duly perfected.

The appellants first contend the testator did not comprehend the extent of his estate or the full nature and consequences of the instrument which he executed as his last will and testament on February 27, 1973.

It is the established rule in Kansas, the deceased possesses testamentary capacity if, on the date he executes the instrument which determines the manner in which the property will be disposed after death, he knows and understands the nature and extent of that property, has an intelligent understanding concerning the disposition he desires to make of it, realizes who his relatives are and the natural objects of his bounty, and comprehends the nature of the claims of those whom he desires to include and exclude in and from participation in his worldly effects after he has no further need for them. *In re Estate of Harris,* 166 Kan. 368, 372, 201 P.2d 1062 (1949); see also *In re Estate of Barnes,* 218 Kan. 275, 543 P.2d 1004 (1975); *In re Estate of Perkins,* 210 Kan. 619, 504 P.2d 564 (1972); *In re Estate of Bernatzki,* 204 Kan. 131, 460 P.2d 527 (1969).

Here the appellants argue the testator repeatedly stated he understood the disposition of his property to be equal among his children. They conclude because Victor was given the option to buy the farm at a price below the market value, the evidence clearly indicates the testator did not understand the value of his property or the effect of his disposition.

The trial court heard an abundance of testimony on this issue. The evidence revealed the testator told his neighbor, Mrs. Irene Fowler, he intended to let Victor buy his land at a price below market value during the summer before his wife died. Mr. Stover, the testator's attorney, testified when he advised Mr. Ziegelmeier the other children would not like the arrangements in the will, the testator responded he might not leave them anything. All of the witnesses to the will testified the testator was fully alert at the time of execution and well able to explain the provisions in the will to them. Moreover, none of the appellants testified the testator lacked sound mind; instead, they said he suffered from depression and old age.

We hold the evidence is undisputed, at the time the testator executed his will, he knew what property he owned; he knew his children's desires; and he knew he wanted his son Victor to have the right to buy his land after his death. Substantial competent evidence exists to support the findings of the trial court as to the testator's capacity.

Next the appellants assert Victor H. Ziegelmeier was guilty of

undue influence. Specifically they contend Victor was almost constantly in their father's company, and he alone advised their father in his personal and business affairs.

Generally, undue influence or fraud, to invalidate a will, must amount to coercion, compulsion or constraint which destroys the testator's free agency, and by overcoming his power of resistance obliges him to adopt the will of another instead of exercising his own, and it must be brought to bear directly on the testamentary act. *In re Estate of Carothers,* 220 Kan. 437, 443, 552 P.2d 1354 (1976); see also *In re Estate of Hall,* 165 Kan. 465, Syl. 8, 195 P.2d 612 (1948). Of course, the burden of proof is on the party claiming undue influence. *In re Estate of Carothers,* 220 Kan. at 443. Legitimate influence is not improper; that is, influence obtained by kindness and affection will not be regarded as undue. *Creighton v. Creighton,* 261 F. 333, 335 (8th Cir. 1919).

The appellants have failed to provide this court with evidence of undue influence. Although there was evidence that Victor was kind and affectionate toward his father, there was no evidence that fraud was practiced by him. The mere fact Victor enjoyed a close relationship with his father and farmed his father's land does not amount to undue influence. Thus, substantial competent evidence exists to support the trial court's decision that the testator did not lack testamentary capacity due to undue influence when he executed his will on February 27, 1973.

Finally, the appellants contend various provisions of the will are ambiguous. They ask this court to rewrite the will by deleting paragraph three which gives Victor the option to buy the farm land. This we cannot do.

We stated the rules for construction of a will in *Russell v. Estate of Russell,* 216 Kan. 730, Syl. 1, 534 P.2d 261 (1975) as follows:

"In construing a will courts must (*a*) arrive at the intention of the testator from an examination of the whole instrument, if consistent with rules of law, giving every single provision thereof a practicable operative effect, (*b*) uphold it if possible, (*c*) avoid any interpretation resulting in intestacy when possible, (*d*) give supreme importance to the intention of the testator, and (*e*) when the language found in such instrument is clearly and unequivocally expressed determine the intent and purpose of the testator without resort to rules of judicial construction applicable to the interpretation of an instrument which is uncertain, indefinite and ambiguous in its terms."

See also *In re Estate of Lehner,* 219 Kan. 100, 103, 547 P.2d 365

(1976); *In re Estate of Hannah,* 215 Kan. 892, 897, 529 P.2d 154 (1974); *In re Estate of Ricklefs,* 211 Kan. 713, 716, 508 P.2d 866 (1973); *In re Estate of Graves,* 203 Kan. 762, Syl. 3, 457 P.2d 71 (1969); *In re Estate of Porter,* 164 Kan. 92, 187 P.2d 520 (1947).

Here the testator's intention is clear and no ambiguity exists in the instrument. This court has no basis for applying the rules of construction, and the will must be upheld as written.

The judgment of the lower court is affirmed.