No. 57,077

In the Matter of the Estate of BIRDIE KERN, Deceased
(716 P.2d 528)

Opinion filed March 28, 1986.

*Irvin R. Borenstein,* of Law Offices of Arthur M. Schwartz, P.C., of Denver, Colorado, argued the cause, and *Caleb Boone,* of Law Offices of Thomas C. Boone, of Hays, was with him on the briefs for appellant/cross-appellee.

*Daniel C. Walter,* of Ryan, Walter & McClymont, Chartered, of Norton, argued the cause and was on the briefs for appellees/cross-appellants.

The opinion of the court was delivered by

MILLER, J.: This is an appeal from an order of the District Court of Phillips County admitting to probate the will of Birdie Kern. The appellant is Viola Engebrit, a niece of the decedent. The appellees are William and Doris Stowell, the executors and principal beneficiaries under the will. The principal issues before us are whether the testatrix lacked testamentary capacity to execute a will, and whether her will was procured by undue influence. The trial court made detailed and extensive findings of fact, for which we find substantial support in the record, and admitted the will to probate.

The evidence is for the most part undisputed. At the time of

the execution of the will, Birdie Kern was eighty-three years of age. She lived alone in her mobile home in Phillipsburg, Kansas. Her second husband died in 1961, and she had no children. At the time of the execution of the will she had two living sisters and a brother—Nellie MacFarlane, Bertha Ludwig and Ralph Rose. Her brothers, Charles Lee Rose, Harry Dean, Jr., and Edmund Dean, and her sister, Lula Dean, predeceased her, leaving a large number of surviving children who were her nephews and nieces.

William Stowell and Doris Stowell are husband and wife and are practicing lawyers in Phillipsburg. They are not related to the decedent. They performed legal services for Birdie Kern in the probate of her first husband's estate in 1953, in probating her second husband's estate in 1961, and in doing certain quiet title work for her. They also assisted her in qualifying for social security benefits, prepared her tax returns, and assisted her in obtaining a settlement from a car accident which occurred in 1981. After her second husband's death in 1961, she relied upon the Stowells for advice of a confidential and business nature. She developed the practice of dropping in at the Stowells' law office once or twice a week for advice on matters of all kinds. It was an unusual relationship. Mrs. Stowell taught her to balance her checkbook. While the Stowells charged Birdie for the probate and legal work they had done in 1961 and earlier years, they did not charge for her weekly visits or the advice that they regularly gave her. Birdie's closest relative lived some 100 miles away and that relative, a niece, visited her once or twice a year. There is no evidence that Birdie had any regular contact with any of her other living relatives.

Both of the Stowells testified that Birdie Kern on numerous occasions expressed a desire to give them 120 acres of land she owned near Speed, Kansas, but on each occasion the Stowells declined the gift, indicating to Birdie that she might need the land for her own income. One of Birdie's neighbors who was in daily contact with her indicated that Birdie told her she would give her land to the Stowells because they took care of her business and she felt closer to them than to her relatives.

In the spring of 1983, Birdie was diagnosed as having cancer of the rectum which had spread to her liver. Her physician considered this condition incurable and told Birdie so. On the advice of

her physician she entered into a hospice program, a medical program in which registered nurses regularly visit the homes of persons who have incurable diseases, checking on their physical condition and orientation, and helping them to adjust to the inevitable results.

After Birdie had been advised that she had incurable cancer, she asked William Stowell to draw a will for her. Suspecting that she intended to make the Stowells beneficiaries of her will, William Stowell prepared a will questionnaire on his law office computer. He did not ordinarily prepare a will questionnaire in drafting a client's will. He took the questionnaire to Birdie and had her fill it out in her own handwriting, without his assistance. As he suspected, Birdie filled out the questionnaire indicating that she wanted to leave her land and the remainder of her property, after small cash gifts to her living brother and sisters, to William and Doris Stowell. Mr. Stowell told Birdie that he could not draw her will if she persisted in desiring to leave property to him and his wife. Birdie then asked Stowell to find a lawyer for her who would prepare her will. Stowell agreed to do this. On July 15, 1983, Stowell contacted Harold McCubbin, a lawyer from an adjoining county, on an occasion when Mr. McCubbin was in Phillips County for a regular court day. Stowell asked McCubbin if he would undertake to meet with Birdie Kern, ascertain her wishes, and, if necessary, draft a will for her. McCubbin agreed to do so. Stowell then gave McCubbin a copy of the will questionnaire which Birdie had completed, and he took McCubbin to Birdie's home. He introduced McCubbin to Birdie and departed. McCubbin remained and visited with Birdie for some twenty-five minutes concerning her proposed will. He returned to his office in Norton and prepared a will in accordance with Birdie's request.

The will, as prepared, names William H. Stowell and Doris Stowell as executors, directs the executors to make certain funeral arrangements, makes a specific bequest of $300 to each of Birdie's living sisters and brother—Bertha Ludwig, Nellie MacFarlane, and Ralph Rose—and devises and bequeaths the remainder of the property to Mr. and Mrs. Stowell. After the will was prepared, McCubbin contacted the testatrix and made arrangements to have it executed at her home on July 18. McCubbin testified that he originally intended to take his wife and his

secretary along as witnesses but they could not go. Birdie Kern had no telephone in her home, so McCubbin called Stowell for the names of potential witnesses in Phillipsburg. Stowell suggested four or five persons and ultimately McCubbin contacted Genevieve Robben, a registered nurse who had been working with Birdie in the hospice program, and Robert Kaup, a local banker. McCubbin, together with the witnesses, met with Birdie Kern at 4:15 o'clock on the afternoon of July 18, 1983, at her trailer home. The Stowells were not present. McCubbin tape recorded a portion of this meeting, and that recording was introduced as evidence. The recording covers the time from shortly after the lawyer and witnesses arrived at Mrs. Kern's residence up until the time they were all ready to sign the will. At that point the tape ran out. McCubbin asked Birdie Kern to name her living brothers and sisters and her deceased brothers and sisters, and she did so. She described generally her property, which consisted of 120 acres of land near Speed, Kansas, her mobile home and personal effects, a checking account, and a "bond" in the bank which, we take it, was a certificate of deposit. McCubbin asked her in substance when she had decided to leave her property to the Stowells, and she responded that they had taken care of her business for her since Clarence died and she had always intended to leave the property to them. McCubbin asked her if the Stowells had ever asked her or suggested to her that she leave her property to them, and she responded: "They never said a word." McCubbin then read the will aloud pursuant to Birdie's request. He read slowly and Birdie commented from time to time, "That's my brother," "That's my sister," or "That's right." The reading was in the presence of the witnesses. The tape recording stopped before the end of the ceremony, but the witnesses testified that nothing occurred after the tape-recorded portion except for the actual execution of the will by Birdie Kern and the witnesses. McCubbin presented Mrs. Kern with a bill for $40 and she wrote out a check and paid him at the time. Later, McCubbin told Stowell that a will had been executed but did not advise him of the contents. McCubbin retained the original will in his office safe as directed by Mrs. Kern, and following her death on October 17, 1983, transmitted the will to the probate division of the district court at Phillipsburg.

The will questionnaire, filled in by Birdie Kern, listed Bertha Ludwig in one place as a living sister and in another as a deceased sister. The decedent made it clear to McCubbin that she wanted to leave $300 to Bertha Ludwig, and that provision was included in the will. When naming her brothers and sisters on the occasion of the will signing, she correctly named Bertha Ludwig as a living sister.

Those persons testifying in behalf of the proponents of the will included the Stowells; McCubbin; the witnesses to the will; another nurse, Sandra Kuhlmann, who worked with Birdie in the hospice program; a neighbor; Birdie's attending physician; and a housekeeper who lived with Birdie the last several months of her life. The nurses and the housekeeper testified that Birdie was oriented and alert and never became confused until shortly before her death in October 1983. The witnesses attested to her mental capacity and her knowledge of her relatives and her property. Additionally, the physician who attended her testified that he noted no unusual mental conditions on either his June or August visits, and no change in her mental condition until October. He believed, however, that she was a very trusting person who could be influenced by authority figures.

The only witness for the respondent (other than McCubbin, who was called by both sides) was Ilene Raile, a niece who lives in St. Francis, Kansas. She testified that it was her practice to visit Birdie twice a year, and she made such a visit in July 1983. She was of the opinion that Birdie was not of sound mind, and not competent to make a will. The sole basis for her conclusion was that Birdie loved her relatives and her relatives loved her, and the witness could not understand Birdie leaving her estate to people who were not her relatives. The trial court noted that respondent, Viola Engebrit, was present and in the courtroom throughout the trial but did not testify.

The trial court concluded that Stowell and McCubbin have absolutely no connection with each other except that they happen to be lawyers in adjoining counties. Both testified that Stowell gave McCubbin no suggestions as to any particular disposition but, instead, instructed McCubbin to give Birdie Kern independent advice and to draw a will for her as she wished. The court found that McCubbin was quite capable of giving independent advice and that Birdie Kern did confer

privately and fully to the extent she wanted with him concerning the proposed disposition of her property. The court found that there was no evidence to support a conclusion that either of the Stowells wrote or prepared the will; to the contrary, the evidence was that Birdie Kern had the advice of independent counsel, who drew the will.

There is no question but that the Stowells occupied the position of confidential advisers and were in a confidential relationship with Birdie Kern. The trial court found that there was absolutely no evidence that any undue influence was exercised by anybody on Birdie Kern. Noting that respondents have the burden of proof on this issue, the trial court found that the burden had not been met and there was no evidence of the exercise of undue influence.

As to the lack of testamentary capacity, the trial court found that this contention was based primarily on three mistakes which Birdie Kern made in answering the will questionnaire. These were (1) listing Bertha Ludwig as both living and deceased when in fact she was alive; (2) failing to list the children of a deceased sister, when in fact the sister had children who survived her; and (3) inability to recall the last name of the respondent, Viola Engebrit, at the time the will questionnaire was answered. The trial court found that the mistake in listing Bertha Ludwig as both living and dead was later recognized even by Birdie Kern, who made a specific bequest to Bertha Ludwig, who was living. Birdie knew her brothers and sisters and which ones were living and which ones were dead. Generally speaking, she knew that some of her deceased brothers and sisters left children who were her nephews and nieces. There was no evidence before the court that Birdie Kern had any contact over a thirty-year-period with some of her nephews and nieces, and Mrs. Engebrit in particular. The court found that:

"[H]er inability to be able to put names to nephews and nieces hardly seems to this Court to destroy her testamentary capacity. Clearly she knew that she had relatives and for the most part she knew who they were and she wasn't inclined to favor them with any testamentary disposition of any significance. . . . [N]umerous witnesses testified to sufficient testamentary capacity of the testator at the critical time."

The court concluded that she understood what property she had, how she wanted it to go at her death, and who were the natural objects of her bounty. The court held that respondents

had failed to carry their burden of proof showing lack of testamentary capacity. The court admitted the will to probate, appointed the Stowells as executors, and directed that upon the filing of the required oaths letters testamentary issue. Finally, the trial court found that the will contest was not frivolous and the court denied opposing requests for attorney fees.

The principal thrust of this appeal is an attack upon the trial court's finding that Birdie Kern had testamentary capacity and that the Stowells did not exercise undue influence over her. Our review of the evidence is governed by the usual rules of appellate review. We stated the applicable rule in *In re Estate of Brown*, 230 Kan. 726, 640 P.2d 1250 (1982), when the issue before us was whether the evidence supported the trial court's finding of lack of testamentary capacity and that undue influence had been exercised. We said:

> "The usual rules of appellate review hold true in cases involving a trial court's ruling on the issues of testamentary capacity and undue influence. In short, this court will not weigh conflicting evidence but will look only to see whether substantial competent evidence exists to support the findings of the trial court. *In re Estate of Barnes*, 218 Kan. 275, 281, 543 P.2d 1004 (1975); *In re Estate of Perkins*, 210 Kan. 619, 626, 504 P.2d 564 (1972); *In re Estate of Bernatzki*, 204 Kan. 131, 133, 460 P.2d 527 (1969); *In re Estate of Mead*, 170 Kan. 435, 438, 226 P.2d 831 (1951)." 230 Kan. at 729.

The first issue here is whether the trial court erred in finding that Birdie Kern had testamentary capacity. We have noted earlier her responses to the will questionnaire. Though she listed the first names of four nephews and nieces, appellant points out that there were other nephews and nieces whose names she did not list.

Our court stated the legal principles governing the question of testamentary capacity in *In re Estate of Brown*, 230 Kan. at page 730:

> "First, as long as the requisite mental capacity exists, a person's power to dispose of his property as he wishes should not be interfered with. *In re Estate of Millar*, 185 Kan. 510, 520, 345 P.2d 1033 (1959). The issue has most recently come before this court in the case of *In re Estate of Ziegelmeier*, 224 Kan. 617, 585 P.2d 974 (1978). At page 621 of that opinion the court stated:
> " 'It is the established rule in Kansas, the deceased possesses testamentary capacity if, on the date he executes the instrument which determines the manner in which the property will be disposed after death, he knows and understands the nature and extent of that property, has an intelligent understanding concerning the disposition he desires to make of it, realizes who his relatives are and the

natural objects of his bounty, and comprehends the nature of the claims of those whom he desires to include and exclude in and from participation in his worldly effects after he has no further need for them. [Citations omitted.]'

"Earlier, in *In re Estate of Perkins*, 210 Kan. 619, 626-27, the court fashioned a check list of applicable rules:

" '(2) In an action to avoid a will on the grounds of incapacity of the testator, when it is shown that a will has been executed in accordance with the formalities required by law, the burden is upon the will contestant and he must produce evidence to support his position. [Citation omitted.]

" '(3) The test of a testamentary capacity is not whether a person has capacity to enter into a complex contract or to engage in intricate business transactions nor is absolute soundness of mind the real test of such capacity. The established rule is that one who is able to understand what property he has, how he wants it to go at his death and who are the natural objects of his bounty is competent to make a will even though he may be feeble in mind and decrepit in body. [Citations omitted.]

" '(4) The time when a will is made is the time of primary importance to be considered in estimating testamentary capacity. Evidence of capacity or lack of capacity before or after that time serves only as an aid to determine the primary question. [Citation omitted.]

" '(5) The mere fact one is under guardianship does not necessarily deprive him of the power to make a will. [Citation omitted.]' "

Here, there is no question that Birdie Kern knew the nature and extent of her property. She knew how she wanted it to go at her death, she knew the names of her brothers and sisters, she knew which of them were deceased, she knew that she wanted to leave something to her surviving brother and sisters, but she did not know—or at least did not state—the names of all of her nephews and nieces. The appellant argued at trial and now on appeal that the decedent's responses to the will questionnaire clearly show that she did not know the natural objects of her bounty, since she omitted the names of several of her nephews and nieces. We conclude that the trial court's disposition of this issue is well reasoned and should be affirmed. There is no evidence in this record to show that the decedent had any contact with any of her nephews and nieces, with the sole exception of the witness Ilene Raile of St. Francis, during at least the last thirty years of her lifetime. There is no showing that she ever met them, no showing that she ever heard all of their names, no showing that any of them, with the exception of Ilene Raile, ever visited her or corresponded with her. The evidence was overwhelming that her mind was clear at the time the will was executed. Further, she knew precisely how she wanted her small estate divided and she knew those persons whom she wished to

share in her property. Under the circumstances, we conclude that there is substantial competent evidence to support the trial court's finding that Birdie Kern had testamentary capacity and was competent to make a will at the time she did so. Even though Birdie Kern was in ill health and an octogenarian, her will ought not be declared invalid simply because she did not know or recall the names of some nephews and nieces with whom she had had little, if any, contact for many years.

We turn next to the contention that Birdie Kern was unduly influenced by the Stowells, and that the trial court erred in finding no undue influence. The general rule concerning undue influence was stated in *In re Estate of Ziegelmeier*, 224 Kan. 617, Syl. ¶ 2, 585 P.2d 974 (1978), in these terms:

"Undue influence to invalidate a will must amount to such coercion, compulsion or constraint that the testator's free agency is destroyed, and by overcoming his power of resistance, the testator is obliged to adopt the will of another rather than exercise his own."

Appellant also relies upon K.S.A. 59-605, which reads:

"**59-605. Preparation of will by principal beneficiary.** If it shall appear that any will was written or prepared by the sole or principal beneficiary in such will, who, at the time of writing or preparing the same, was the confidential agent or legal adviser of the testator, or who occupied at the time any other position of confidence or trust to such testator, such will shall not be held to be valid unless it shall affirmatively appear that the testator had read or knew the contents of such will, and had independent advice with reference thereto."

The trial court addressed the issue of undue influence as follows:

"2. Independent Advice of Counsel. K.S.A. 59-605 provides that when a will is written by the principal beneficiary and the principal beneficiary was the confidential agent or legal adviser of the testator, the will will not be held valid unless it shall affirmatively appear that the testator had independent advice. The statute has three conditions and Mr. William Stowell only fulfills two of these conditions. That is, Mr. Stowell admits to being the confidential adviser and he further is quite obviously the principal beneficiary. However, Harold McCubbin, a lawyer in regular practice, was the scrivener of the will. For the statute to be applicable, it appears that all three conditions must be met. See *In Re Estate of Schippel*, 169 Kan. 151, 218 P.2d 192 (1950). The *Schippel* case does recognize that under certain circumstances a person occupying the position of a go-between could be considered the actual scrivener. In other words, if William Stowell was a mere go-between as between the testator and lawyer McCubbin, then perhaps it could be said that Mr. Stowell in fact wrote the will. Although Mr. Stowell did give Mr. McCubbin the will questionnaire, he has testified that he did not participate in helping Birdie fill out this will questionnaire, nor did he suggest to her any disposition of her property. Harold McCubbin has testified that he did

not use the will questionnaire when he independently visited with Birdie Kern about her intended testamentary disposition and that the will was drawn as per her directions in this visit. Mr. McCubbin and Mr. Stowell have absolutely no connection with each other except that they happen to be lawyers practicing in adjoining counties in the 17th Judicial District of Kansas. The Court cannot conclude that Mr. Stowell and Mr. McCubbin are so interconnected that it can be said that Mr. McCubbin was merely the agent of Mr. Stowell and that Mr. Stowell was in fact the person who drafted the will. Mr. McCubbin has testified as has Mr. Stowell, that Mr. Stowell did not suggest any particular disposition, but instead instructed Mr. McCubbin to give Birdie Kern independent advice and to draw a will for her as she wished. There is no contrary evidence in the record. In *Flintjer v. Rehm*, 120 Kan. 13, Syl. 2 (1926), the term independent advice is said to mean that the testator had the preliminary benefit of conferring fully and privately upon the subject of her intended will with a person who was not only competent to inform her correctly as to its effect, but who was so disassociated from the interest of the beneficiary named therein as to be in a position to advise with the testator impartially and confidentially as to the consequences of those naturally entitled to the testator's bounty. Harold McCubbin, a lawyer regularly practicing in Norton County, Kansas, and with no connection whatsoever with the principal beneficiary in the will, was a person quite capable of giving independent advice and Birdie Kern did confer privately and fully to the extent she wanted with him concerning her proposed disposition of her property. In short, there is no evidence to support a conclusion that William or Doris Stowell wrote or prepared this will and the evidence further shows that Birdie Kern had the advice of independent counsel.

"3. The mere existence of a confidential relationship does not raise a presumption the beneficiary has exercised undue influence over the testator. See *Klose v. Collins*, 137 Kan. 321, 326, 20 P.2d 494 (1933). In this case, both William and Doris Stowell have testified that they never at any point suggested to Birdie Kern that she leave any of her property to them and as a matter of fact, they rejected suggestions made years earlier that the property be deeded to them. Bill Stowell has denied that he made any particular suggestion in this regard to lawyer McCubbin. Lawyer McCubbin has denied that any particular suggestion of this nature was made to him. Birdie Kern herself, in answering a portion of the will questionnaire and in responding to Mr. McCubbin's inquiry at his initial conference with her, denied that anybody suggested this particular disposition of her property to her. In the tape recording of the actual circumstances surrounding the execution of the will, Birdie Kern can be heard to say clearly and without confusion that she was leaving the property in her will to her friends, Bill and Mrs. Stowell, as she had intended forever, because after her husband died they took care of her business and that they never said a word to her about leaving her property to them. In short, there is absolutely no evidence that any undue influence was exercised by anybody and since the respondents have the burden of proof on this issue, the Court would have to find that the burden has not been met and there is no evidence of the exercise of undue influence."

As we noted earlier, there is no question but that the Stowells occupied a position of confidential advisers to Birdie Kern, and they are the principal beneficiaries under the will. However, for

K.S.A. 59-605 to apply, it must appear that the will was written or prepared by the principal beneficiaries. That is simply not the case here, and the trial court so found. The will was prepared by attorney McCubbin, following his private conference with Birdie Kern. Though the will generally follows the answers Birdie had written in response to the will questionnaire, the will contained other provisions suggested by McCubbin. McCubbin was not under any compulsion to follow the will questionnaire, although admittedly it was useful to him, and Stowell made no suggestions or requests to him other than to carry out Birdie's request and prepare a will to carry out her desires. McCubbin was completely disassociated from the interests of the Stowells and was in a position to discuss the matter with Birdie, advise her, and prepare a document according to her wishes. As preparer of the will, McCubbin was not the principal beneficiary. The statute, therefore, is inapplicable.

We agree with the trial court that the mere existence of a confidential relationship between Birdie Kern and the Stowells does not raise a presumption that they exercised undue influence over her. See *In re Adoption of Irons*, 235 Kan. 540, 547, 684 P.2d 332 (1984). Birdie Kern stated emphatically, at the time of the signing of the will, that the Stowells made no suggestion to her that she leave her property to them. There is no evidence that the Stowells exercised undue influence over her.

Finally, appellant argues that there were several suspicious circumstances. The Stowells had given advice to Birdie Kern and assisted her in conducting her affairs for many years, and she trusted them. The mere fact that there was trust and that there was a confidential relationship and that there was kindness and concern for Birdie Kern by the Stowells does not establish undue influence. There is no evidence that there was any coercion, compulsion or constraint, or that Birdie Kern's power of resistance was overcome by any action taken by the Stowells.

The other circumstances to which the appellant calls our attention are the actions taken by William Stowell once he learned that Birdie Kern wished to make a will. The actions appear cautious, however, and not suspicious. Stowell selected McCubbin, handed McCubbin a copy of the will questionnaire, and introduced McCubbin to Birdie Kern. Beyond that Stowell did nothing to assist in the preparation of the will. The entire

matter was left in McCubbin's hands. The fact that McCubbin called Stowell, a long-time resident of Phillipsburg, and asked for suggestions as to the names of possible witnesses is not suspicious, but is reasonable conduct since there is nothing to indicate that McCubbin was widely acquainted in Phillipsburg. The witnesses secured were a banker who had had contact with Birdie over a period of many years and one of the registered nurses who saw her regularly. There was no evidence that either of the witnesses were related to the Stowells or that they were in any way obligated to them.

Finally, appellant argues that Birdie Kern did not receive independent advice. Since the principal beneficiaries did not write the will, the statute noted above is inapplicable and there was no need for proof of independent advice. However, there was clear and undisputed evidence that Birdie Kern was afforded independent advice by McCubbin. The evidence before the trial court overwhelmingly supports its finding that the will was free of any undue influence.

A question of jurisdiction has been raised. The journal entry of judgment was filed on April 4, 1984. A motion for a new trial, or to alter or amend the judgment, was overruled and the journal entry reflecting that action was filed on June 4, 1984. Notice of appeal was timely filed June 8, 1984. The Court of Appeals remanded for the purpose of setting a bond. The trial court fixed the amount of the appeal bond, pursuant to K.S.A. 59-2401(b), by order entered November 5 and filed November 9, 1984. Bond was not filed immediately and, on January 3, 1985, the Court of Appeals dismissed the appeal. Appellant filed the required bond and a motion for reinstatement of the appeal on January 18, and the Court of Appeals reinstated the appeal on January 30.

It is argued that a motion for reinstatement is tantamount to a motion for a rehearing; that under our rule 7.05(a) [235 Kan. lxxv] such a motion should be served within ten days after the order of dismissal; and, therefore, the appeal should be dismissed for lack of jurisdiction. We do not agree. K.S.A. 59-2401(b) does not fix a time within which an appeal bond must be filed. That matter is left to the discretion of the trial court. The order here entered directed that the bond be filed forthwith. It was filed about seventy days later. The matter of reinstatement was discretionary with the Court of Appeals and not jurisdictional. The appeal had

not yet been heard on its merits. Under the circumstances, we hold that this court has jurisdiction to hear the appeal.

By cross-appeal, appellees contend that the trial court erred in overruling their motion for the assessment of costs and attorney fees against the principal contestant of the will, Viola Engebrit, under either K.S.A. 60-2007(b) or K.S.A. 59-2214. The former provides for the assessment of costs and fees "if the court finds that a party . . . has asserted a claim or defense . . . without a reasonable basis in fact and not in good faith . . . ." The latter provides for the taxation of the costs in all probate proceedings against the estate "unless it appears that it would be unjust and inequitable to do so, in which event the court shall tax such costs or any part thereof against such party as it appears to the court is just and equitable . . . ."

The trial court found that the will contest was not frivolous and that the proceedings were not instigated or maintained in bad faith. The court said:

"[W]e have here a case in which the decedent essentially cut out of her will for all practical purposes, all of the natural objects of her bounty, and gave her estate to a stranger who was a friend but also a confidential advisor. As a result, the heirs at law felt constrained to bring a will contest. That, to me, is the kind of a case where you are likely to get a will contest.

"I have already found that it was not a frivolous action. I think these people were acting in good faith. Under those circumstances I am not going to make a finding that it was unjust and unequitable to put the costs of the case on the estate."

Although, as we pointed out above, there were no suspicious circumstances, there were unusual circumstances. Birdie Kern chose to leave small bequests to her surviving brother and sisters, giving the bulk of the estate to her long-time attorneys and advisors. This is not the customary or usual testamentary disposition; it is unusual. As the trial court observed, it "is the kind of a case where you are likely to get a will contest." The trial judge, assigned in from another district to hear this case, heard the testimony and observed the witnesses. He held that the will contest was in good faith and not frivolous.

It has long been the rule in this state that a trial court's findings, when based upon substantial, competent evidence, are entitled to great weight, and they will not be set aside unless they are clearly erroneous. Although there is some basis in the evidence upon which the trial court might have made findings to

the contrary, we hold that the court's findings were not clearly erroneous.

Appellees also seek to recover their costs expended in the prosecution of this appeal, including an allowance of attorney fees. The majority of the members of this court conclude that the appeal was not frivolous and was not taken in bad faith. We therefore deny the motion for allowance of fees here, although the usual costs of the appeal will be assessed against the appellant.

The judgment is affirmed.

SCHROEDER, C.J., dissenting: The admitted facts in this case require the application of K.S.A. 59-605 and a reversal of the judgment of the trial court.

The provisions of K.S.A. 59-605 apply when three conditions are present: a will is (1) written or prepared by (2) a sole or principal beneficiary who (3) at the time of writing or preparing the same, was the testator's confidential agent or legal adviser of the testator, or who occupied at the time any other position of confidence or trust to such testator. All three conditions are present in this case.

The Stowells, both attorneys, admit two of the three conditions are satisfied: They are the principal beneficiaries under the will and were confidential advisors to the testatrix. As confidential advisors they stood in a fiduciary relationship to the testatrix when her will was prepared.

Any unfair transaction undertaken by one in a fiduciary relationship may result in liability for unjust enrichment of the fiduciary. Where the fairness of a fiduciary transaction is challenged, the burden of proof is upon the fiduciary to prove by clear and satisfactory evidence that such transaction was fair and done in good faith. *Sampson v. Hunt*, 233 Kan. 572, 665 P.2d 743 (1983). The burden of proof cast upon the Stowells in this case was to show by clear and satisfactory evidence that the mandates of K.S.A. 59-605 were satisfied in order to sustain the validity of the testatrix' will.

The admitted facts in this case establish as a matter of law that McCubbin was acting as an agent for the Stowells in the preparation of the will of the testatrix which left the substantial share of her estate to the Stowells.

This court stated in *In re Estate of Schippel*, 169 Kan. 151, 161,

218 P.2d 192 (1950), "It may be conceded that under some circumstances a person occupying such a position of 'go-between' could be considered and held to be the one 'writing or preparing' a will within the meaning of [K.S.A. 59-605]. . . ."

The admitted facts controlling the decision are as follows:

1. While in a fiduciary relationship, the Stowells prepared and submitted a will questionnaire to the testatrix, which they had her answer in theirpresence. Heretofore, the Stowells had never used this particular form of questionnaire in the preparation of a will in their legal practice.

2. The testatrix was advised that it was necessary that she consult another attorney if she desired to leave her property to them, but she stated she knew no other attorney. The Stowells then selected Mr. McCubbin, who practiced law in a county adjoining Phillips County. This was done by the Stowells because they felt an attorney from their county, where the testatrix resided, might be reluctant to get involved in leaving almost the entire estate of the testatrix to lawyers in Phillips County.

3. The Stowells provided Mr. McCubbin with a copy of the will questionnaire together with the testatrix' answers thereto. Mr. Stowell *accompanied* Mr. McCubbin to the home of the testatrix.

4. Mr. McCubbin spent a mere 24 minutes with the testatrix. In his testimony Mr. McCubbin admitted at the trial he did not know of the existence of a discrepancy in the will questionnaire—that the testatrix at one place said her sister Bertha Ludwig was deceased and in another place that Bertha Ludwig was living and that this sister should be given $300 in the will.

5. The will prepared by Mr. McCubbin followed precisely the disposition of the property as it was set forth in the will questionnaire, except for one tax matter.

6. The names of the witnesses from which Mr. McCubbin made the selection were supplied to Mr. McCubbin by the Stowells.

7. Although Mr. McCubbin had never before in his practice tape-recorded the execution of a will, he tape-recorded this one, asking the testatrix whether the Stowells had ever asked or suggested that she leave them her property. The

taped execution was also used to demonstrate the testatrix knew the contents of her will. *But the tape ran out before the execution of the will was completed.*

Knowing that K.S.A. 59-605 applied to the preparation and execution of the will in this case, the Stowells attempted to circumvent its thrust. To validate the will, they were required to make it affirmatively appear the testatrix had read or knew the contents of her will *and that she had received independent legal advice.* On the latter requirement they failed. The record indicates no independent advice was given, although the testatrix had many relatives, some living within a two hour driving distance of the testatrix' home, who could have aided in securing independent counsel. The Stowells have succeeded only in showing that Mr. McCubbin was their agent in the preparation and execution of the will of Birdie Kern. In reality, the will was not prepared by McCubbin but rather by the Stowells whose ever present hand is evident in these facts.

When Birdie Kern told the Stowells she wanted to give them her land, rather than going through the motions of drafting a will questionnaire and all that followed, Mr. Stowell should have recommended *she personally* find another attorney through the recommendations of either her family or friends.

Birdie Kern's physician testified she was in the hospice program at his recommendation. It was his opinion she could be easily influenced by authority figures. From May 1983 onward Genevieve Robben, a registered nurse, visited Birdie Kern on a regular basis as a hospice employee. Sandra Kuhlmann, a nurse, also worked with Birdie as an employee in this program. Joan Krenzer moved in with Birdie in July 1983 as a housekeeper. Birdie was also acquainted with Robert E. Kaup, the manager of the Farmer's National Bank in Phillipsburg. Therefore, Birdie had many persons with whom she could have consulted for recommendations regarding the selection of an independent attorney.

The rarely used will questionnaire and tape-recorded execution of the will illustrate not an attempt by the Stowells to satisfy the requirements of K.S.A. 59-605, but their attempt to circumvent and manipulate the statute for their own benefit.

Findings of fact made by a trial court cannot override the legal consequence of facts admitted by the parties upon whom the

burden of proof is cast. The legal significance of the admitted facts in this case should not be ignored by the appellate court by simply saying there is evidence from which a trial court could make the findings that it did.

In corporate cases, where an individual uses a corporation merely as an instrumentality, as a sham, to conduct personal business and perpetrates fraud or injustice on those dealing with the corporation, this court disregards the corporate entity and holds the individual liable. See *Sampson v. Hunt*, 233 Kan. at 578-82. The corporate veil is pierced in order to get at the truth, to expose the sham, and to prevent injustice. Here, that same approach is applicable. We should look beyond the sham carried out by the Stowells consisting of a will questionnaire, so-called "independent" legal advice, and the partial taping of the execution of the will to satisfy the statute. We should recognize this transaction for what it is—overreaching by the Stowells.

*In re Estate of Seeger*, 208 Kan. 151, 160, 490 P.2d 407 (1971) (Fromme, J., dissenting), it was stated:

"There is no profession [as the legal profession] in which so many temptations beset the path of him who is to serve with strict integrity and loyalty. There are pitfalls at every step to be avoided if the integrity and good name of the bar and of the administration of the law are upheld. A lawyer must exercise prudence and self-denial as well as moral courage if he is to maintain the high ethical standards expected of lawyers."

The public perception of this transaction clearly will be one of overreaching by attorneys. It is an embarrassment for other members of the Bar to be associated with such behavior. See *In re Estate of Seeger*, 208 Kan. at 160-62.

It is respectfully submitted the judgment of the lower court should be reversed.